AO 106 (REV 4/10) Affidavit for Search Warrant

SAUSA Charles Fox, (312) 886-0973

**FILED**
6/17/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

## UNDER SEAL

In the Matter of the Search of:

The Google account sbchaudhary71@gmail.com, further described in Attachment A

Case No. 24M490

Ref. No. 2023R0147

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Daniel Maslanka, a Special Agent of the Department of Homeland Security, Homeland Security Investigations, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of California, there is now concealed:

### See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) | identification document fraud and money laundering |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

_____
*Applicant's Signature*

DANIEL MASLANKA, Special Agent
Homeland Security Investigations
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: June 17, 2024, 2:30pm

_____
*Judge's signature*

City and State: Chicago, Illinois

JEFFREY COLE, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT )
NORTHERN DISTRICT OF
ILLINOIS )

## AFFIDAVIT

I, Daniel Maslanka, being duly sworn, state as follows:

1.      I am a Special Agent with Homeland Security Investigations. I have been so employed since approximately August 2020. Prior to becoming a special agent, I was employed as a sworn U.S. Customs and Border Protection Officer beginning in August of 2016.

2.      As part of my duties as a Homeland Security Investigations Special Agent, I investigate criminal violations relating to white collar crime, including mail, wire, and money laundering.  I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I have participated in the execution of multiple search warrants.

3.      This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Google, a free web-based electronic mail service provider located at 1600 Amphitheatre Parkway, Mountain View, California, 94043. The account to be searched is sbchaudhary71@gmail.com

1

("**Subject Account 1**"), which is further described in the following paragraphs and in Part II of Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Google, there exists evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i).

4.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i), are located in the Subject Account.

## I.     BACKGROUND INFORMATION

### A.     Google

5.     Based on my training and experience and information available from Google's website (google.com), I have learned the following information about Google and Gmail:

a.     Google offers a collection of Internet-based services, including e-mail and online data storage, which is owned and controlled by Google. The services

are available at no cost to Internet users, though there are certain options, such as additional online data storage, that users may elect to pay money to receive. Subscribers obtain an account by registering on the Internet with Google and

b.      providing Google with basic information, including name, gender, zip code, and other personal/biographical information. Subscribers are given a Google account which ends in "@gmail.com" which is utilized to access these online services.

c.      Google maintains electronic records pertaining to the individuals and entities who maintain Google online subscriber accounts. These records often include account access information, e-mail transaction information, account application information, and in some circumstances billing and payment information.

d.      Any e-mail that is sent to a Google online account subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Google. If the message is not deleted by the subscriber, the account is below the maximum storage limit, and the subscriber accesses the account periodically, that message can remain on Google's servers indefinitely.

e.      When a subscriber sends an e-mail, it is initiated by the user, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google online account users have the option of saving a copy of the e-

mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail may remain on the system indefinitely.

f.      Google online account subscribers can store files, including but not limited to e-mails, documents, and image files, on servers maintained and/or owned by Google. The online data storage service is known as "Google Drive." Google online account subscribers can also utilize a feature known as "History" that allows a user to track various historical account activity, including past Google Internet searches performed, information regarding devices which have been used to login to the Google online account, and physical location information regarding from where the Google online account was accessed.

g.      Google Maps allows users to search for places and routes to navigate there using public transportation, vehicle, bicycle, or foot. Users can label or designate specific places in Google such as home or work. Google Maps also records commute routes and commute settings based on recorded patterns such as date and time, origin and destination, and route traveled. Google Maps Timeline stores places visited and routes taken based on the user's Location History.

h.      Google keeps records that can reveal accounts accessed from the same electronic device, such as the same computer or mobile phone, including accounts that are linked by "cookies," which are small pieces of text sent to the user's Internet browser when visiting websites.

4

6.     Therefore, the computers of Google are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Google, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, to protect the rights of the subjects of the investigation and to effectively pursue this investigation, authority is sought to allow Google to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

## II.     FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

7.     In summary, HSI is investigating a complex transnational money-laundering scheme. As part of this investigation, HSI previously executed search warrants on Google for **Subject Account 1** for the date range October 8, 2022, to May 9, 2023 (Google Warrant 2), and on Apple for **Subject Account 1** for the date range October 8, 2022, to January 4, 2024 (sbchaudhary Apple Warrant 2). While reviewing the materials provided by Google and Apple pursuant to prior search warrants to determine whether they fell within those date ranges, I observed materials that are likely evidence or instrumentalities of the **Subject Offenses** but

5

that fell outside the date range prescribed by the prior Google warrants. This warrant will allow HSI to collect those materials by expanding the date range for materials from the Google account associated with **Subject Account 1**, to October 8, 2022, to January 4, 2024.

*January 25, 2023 Encounter with Individual A[1]*

8.    On January 25, 2023, HSI was contacted by the Department of Homeland Security (DHS) Office of Inspector General (OIG) who reported that the Riverdale Police Department (RPD) had Individual A in custody for questioning regarding possible money laundering. Individual A had attempted to pick up a package from a UPS access point, located at a CVS store in Riverdale, Illinois. Prior to Individual A arriving at the CVS, the CVS store manager had received a phone call from a purported victim's advocate who gave her name as "Cagney Phillips," who advised that a package addressed to "Oliver Martin" would be delivered that contained money that was proceeds of a scam, identifying a victim, Victim 1, by last name and first initial. Later investigation by law enforcement revealed that the purported victim's advocate had given a false name or place of work.

---

[1] Individual A has no criminal record. A review of immigration records revealed that Individual A has no legal status in the United States, but is seeking immigration benefits from the Department of Homeland Security. In relation to this case, Individual A has not been made any promises regarding whether she will be charged, but has been informed that the government looks favorably on cooperation.

9.    According to information I reviewed from UPS's website, the CVS store is a UPS access point to which UPS can deliver packages. To pick up a package from the location, an individual must present a government-issued identification matching the full name to which the package is addressed.

10.    The package Individual A attempted to pick up listed as its sender Victim 1, who is located in Colorado. UPS online tracking/shipping records indicate that the package was shipped via UPS next day air to Olivia Martin at the Riverdale CVS. RPD recovered the package from CVS on January 25.

11.    I was informed by RPD, that Individual A arrived at the CVS and law enforcement asked her for identification. Individual A identified herself to RPD as Olivia Martin and presented a California driver's license in that name, bearing number 24867504, and an address in Plumas Lake, California. RPD determined the California driver's license to be counterfeit based on its appearance and on a check of the license through a law enforcement database.  Individual A later presented a genuine Illinois Temporary Visitor Driver's License to RPD, containing her true name. Individual A's date of birth is not the same as the date of birth listed on the Olivia Martin driver's license, but she is of the same approximate age.

12.    Individual A told RPD she was instructed by a man named "Shreyesh" to pick up a package at the CVS in Riverdale, Illinois that contained $20,000 in U.S. currency. Individual A further stated that "Shreyesh" told her to take $300.00 out of

7

the package to keep for herself. Individual A told RPD she had more counterfeit driver's licenses. While outside the CVS with RPD, Individual A went to her vehicle and presented a total of 14 counterfeit California driver's licenses to RPD. I have reviewed the licenses and observed that each contained a different name, date of birth, and driver's license number, but the same photograph of Individual A and the same California address.

13. Individual A was taken into custody by RPD and taken to a police station. At the station, law enforcement advised Individual A of her Miranda rights and she agreed to be interviewed. Individual A stated she illegally entered the U.S. in 2019 and owed an organization in India $40,000 for helping her. Individual A stated that she previously picked up two other packages from a Subway and a CVS store, containing $10,000 and $15,000 in cash. RPD obtained consent from Individual A for law enforcement to search her vehicle, cell phone and residence. Individual A was released later that evening and provided a ride home by RPD.

14. On January 25, 2023, law enforcement searched Individual A's residence, an apartment located in Oak Forest, Illinois. During the search, Individual A provided law enforcement $44,500 in cash. Individual A stated she obtained the money from two packages she had previously picked up on or about January 25, 2023 from a Subway restaurant located in Alsip, Illinois, and a CVS store located in

Calumet City, IL. In a subsequent interview, Individual A stated that she had worked at the Subway in Alsip.

15.     Individual A told law enforcement that she had discarded the two empty packages that had contained the money into the apartment complex trash bin outside her residence. Law enforcement recovered the two empty packages, which each bore the name of the sender: Victim 2, located in Idaho, and Victim 3, located in South Carolina. The package shipped from Victim 3 was addressed to Ruby Anderson, the name on one of Individual A's California driver's licenses. The package shipped from Victim 2 and shipped to the Subway at which Individual A had previously worked was addressed to "Richard Jones."

16.     On January 25, Individual A signed a form disclaiming any ownership in the money contained in the package recovered from CVS. The following day, RPD opened the package and found that it contained a small black container, approximately the size and shape of a cash box, with $11,000 in cash inside it.

*Interviews with Victims*

17.     Law enforcement interviews with Victims 1, 2, and 3 indicate that all have recently been victims of telephone and internet-based fraud schemes.

18.     The package recovered at the CVS on January 25 did not list a shipping name. Information received in response to a grand jury subpoena to the shipping location indicated that the shipper was Victim 1. I conducted an interview with

9

Victim 1 on February 17, 2023 and reviewed a police report Victim 1 had made. Victim 1 stated that s/he had been contacted on or about January 23, first by a man who called himself "Kevin" and then by a man who called himself "Mark Wadson." The men told Victim 1 that her/his credit card accounts and Social Security number had been compromised. They instructed Victim 1 to withdraw $11,000 from her bank account and ship it to the CVS UPS access point in Riverdale, Illinois addressing it to Olivia Martin.

19.     I interviewed Victim 2 on January 30, 2023, and reviewed a police report Victim 2 had made. Victim 2 reported that in November 2022, s/he was on her/his computer when a screen appeared saying "Microsoft Security Breach" and a 1-800 number was provided to call for assistance. Victim 2 contacted the 1-800 number and was forwarded to an individual who identified himself as "Alex", who identified as a bank fraud investigator from Potlatch No. 1 Financial Credit Union (P1FCU), where Victim 2 has an account. Alex instructed Victim 2 to withdraw money from her/his bank account and send that money to addresses he provided. Most recently, Alex had instructed Victim 2 to withdraw $26,000 and ship it to the Subway restaurant in Alsip, Illinois.  Alex also instructed Victim 2 to purchase gift cards and read off the information found on the gift cards to him. Victim 2 estimates she has been defrauded of approximately $172,000 in cash and gift cards combined.

20. Victim 3 filed two police reports with local police in South Carolina in January 2023. Prior to the second police report, law enforcement subsequently interviewed Victim 3's son in relation to this investigation. Victim 3 and her/his son indicated that Victim 3 was contacted by phone by a person who identified themselves as a Wells Fargo bank employee and transferred her/him to another individual who identified himself as "Mike Rodgers", an officer of the Federal Trade Commission (FTC). Victim 3 was instructed to withdraw $22,000 from her/his Wells Fargo account. Rodgers told Victim 3 to use $3,000 of the money to purchase gift cards and provide Rodgers with the card information over the phone. S/he was instructed to ship the remaining $19,000 to the CVS store in Calumet City, Illinois.

21. Victim 4 was interviewed by the Rumford, Maine Police Department on March 21, 2023, after HSI SA Andrea Ficarella contacted them regarding victim 4 in relation to this investigation. Victim 4 was contacted by phone by a person who identified themselves as "Eric Boston" working for a company out of Washington, D.C. and told Victim 4 his bank account had been compromised. Victim 4 was instructed to mail several packages of money through UPS to several Illinois addresses. Victim 4 estimates he/she has been defrauded of approximately $90,000 in cash.

*Information Received from Individual A*

22. I interviewed Individual A several times between January 26, 2023, and March 1, 2023. Individual A stated that she was contacted on WhatsApp by

11

SHREYASH B. CHAUDHARI or CHAUDHARY a.k.a. Kena in approximately December 2022 who offered her a way to make money. Individual A met CHAUDHARY on social media in 2020 and have been friends since then. Individual A stated that CHAUDHARY is located in India, but uses a U.S. phone number on WhatsApp to contact Individual A. CHAUDHARY offered Individual A the chance to pick up packages from locations around where she lived and deliver the money inside the packages to contacts provided to her by CHAUDHARY. CHAUDHARY told her that the money came from individuals who were present in the United States unlawfully and needed to send back payment to India for their passage into the United States. Individual A initially denied picking up packages beyond the three in her possession on January 25, but later admitted to picking up approximately nine or ten packages on previous occasions.

23.     CHAUDHARY instructed Individual A to send pictures of herself to CHAUDHARY's email address, which he informed her was **Subject Account 1**. Individual A stated that in January 2023 that she sent a passport photo of herself and a photo of her driver's license to **Subject Account 1**. Individual A then received the fourteen counterfeit California driver's licenses, which contained the passport photo she had sent.

12

24.     CHAUDHARY instructed Individual A to text him addresses that were near her home in Oak Forest, Illinois, so that the packages could be sent to those addresses. Individual A texted him several addresses.

25.     For each package, CHAUDHARY instructed Individual A to pick up the package at a certain location and which of her counterfeit California driver's licenses she should use to pick up the package. After picking up the package, Individual A was told by CHAUDHARY to take approximately $300 for herself and notify CHAUDHARY that she had received the package. Each package contained cash. For some but not all packages, Individual A counted the money and informed CHAUDHARY of the amount. CHAUDHARY would then send Individual A contact information for the person who would pick up the package from Individual A.

26.     According to Individual A, two individuals picked up packages from Individual A, one who identified himself by name and an unknown African-American man who contacted Individual A by iMessage and picked up packages in the company of an unknown woman. These individuals picked up approximately nine to ten packages from Individual A. CHAUDHARY told Individual A to contact two other individuals to pick up the three packages recovered by law enforcement.

*Review of Individual A's Phone*

27.     Law enforcement made a copy of the data on Individual A's phone with her consent. Review of the data shows that Individual A communicated with a

WhatsApp phone number: 762-344-1876 (**Subject Phone 1**). Individual A confirmed the phone number was used by CHAUDHARY. Text messages between Individual A and **Subject Phone 1** begin on December 19, 2022, and continue until February 28, 2023. Individual A stated and review of the text communications confirm that she and CHAUDHARY communicate primarily in Gujarati with some use of English words.

28.     For example, on December 19, 2022, CHAUDHARY sent text messages to Individual A containing information on UPS packages being sent to addresses in Oak Forest, Illinois. One of the text messages stated "Amount - 10500."

29.     In relation to **Subject Account 1,** on December 30, 2022, CHAUDHARY sent a series of text messages to Individual A reading, "sbchaudhary71@gmail.com", "license no pic moklje" and "and hight weight pn kehje." An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "send the photo of the license" and "also tell me the height and weight." A screenshot of the text messages is below.

14



30.     Review of Individual A's phone shows a passport style photo of her dated January 3, 2023 that appears identical to the photo of Individual A on the counterfeit licenses. Law enforcement was unable to locate a copy of the email containing the passport photo on Individual A's phone. At the direction of law enforcement, Individual A attempted to search her email for **Subject Account 1** on two occasions, one in the presence of law enforcement, and was unable to locate the email to **Subject Account 1** containing her passport photo. Individual A stated that she may have deleted the email.

15

*Identification of Clarence CANNON*

31.     Individual A stated that she was initially called by the African-American man, but was not able to locate his phone number in her phone or recall the number. She was able to identify the man's email address as ccann_0017@yahoo.com. Records received from Yahoo, Inc. in response to a grand jury subpoena indicated that the subscriber was Clarence CANNON.

32.     Records received from the United States Department of State indicate that CANNON had a U.S. passport issued to him in 2017. In his passport application, he listed ccann_0017@yahoo.com as his email address and listed a mailing address in Iuka, Mississippi.

33.     Based on information obtained from Individual A's phone, it appears that CHAUDHARY introduced Individual A to CANNON. On or about December 28, 2022, CHAUDHARY sent a series of WhatsApp messages to Individual A reading, "*USD. 22,350/-* Clarence Cannon 7457 e parr St st Anne IL 60964 Mbl.256 436-2165 +971529573567 (Whatsapp) *1$...C 66624523 A*" and "aa number note lain aavse photo padin aapje". An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "This number will be brought (given) with a note, take a photo and give (send) it to me".

34.     Individual A stated CHAUDHARY provided serial numbers of U.S. one-dollar bills to her that Individual A could use to verify the identity of the individuals

16

picking up money from her. Based upon this, my understanding is that during this conversation, CHAUDHARY was telling Individual A that the number C66624523 would be found on a U.S. one-dollar bill provided by the person who would pick up the money from her.

*Controlled Delivery of Sham Currency*

35.     Under the direction of law enforcement, Individual A texted with CHAUDHARY using the number of **Subject Phone 1** on WhatsApp on February 3, 2023 that she had the money from the three recovered packages and could deliver it when she returned to Chicago. CHAUDHARY responded that Individual A should call him when she returned. Law enforcement reviewed these texts and confirmed the meaning of the Gujarati words used through an agent fluent in Gujarati.

36.     On Friday, February 24, Individual A texted CHAUDHARY that she would be back in Chicago on Sunday and asked CHAUDHARY for the phone number of the person who would pick up the money from her. CHAUDHARY texted Individual A that she would be receiving a call from that person. On February 27, Individual A received a call on WhatsApp from an unknown person, but did not speak to the person. Individual A later texted the unknown person's WhatsApp number and told the person that they could meet at a Mariano's in Des Plaines, Illinois on February 28 at noon. The user of the number responded "Ok."

17

37.     On February 28, 2023, law enforcement provided Individual A an FedEx box containing sham U.S. currency to provide at the meeting. Law enforcement surveilled Individual A and her vehicle during the meeting. Law enforcement observed a black Nissan Altima, with two occupants, drive to meet Individual A's vehicle on a street near the Mariano's. Immediately prior to the meeting, the same WhatsApp number that had contacted Individual A instructed her to drive to a particular street near the Mariano's for the drop off. Individual A pulled alongside the curb of the street and approximately a minute later, Individual A passed a white box out her driver's side window to an outstretched hand from the front passenger side of the black Nissan Altima. Law enforcement subsequently detained and interviewed the occupants of the Nissan, who after being advised of their Miranda rights and consenting to be interviewed stated that they had received directions to meet Individual A from the same WhatsApp number that communicated with Individual A.

*Subscriber Information from Google and WhatsApp*

38.     Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

39.     Records received from Google in response to a grand jury subpoena list the subscriber for **Subject Account 1** as Sb Chaudhary. **Subject Account 1** has a

linked Google Pay account with subscriber name Shreyas B. Chaudhary and a billing address in Gandhinagar, Gujarat, India.

40. On April 3, 2024, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Google, requesting that Google preserve records relating to **Subject Account 1** for a period of 90 days.

*The Prior Google Warrants*

41. On or about April 4, 2023, the Hon. Judge Maria Valdez, United States Magistrate Judge, approved a warrant in Case No. 23 M 348 to search **Subject Account 1** (the "Google Warrant 1"). A true and correct copy of the Application and Affidavit in support of Google Warrant 1 are attached as **Exhibit A** and incorporated by reference. The Google Warrant 1 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses"**), from December 19, 2022, to February 28, 2023."

42. On or about April 5, 2023, I served Google Warrant 1 on Google.

43. On or about April 18, 2023, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

19

44.     Under Google Account Subscriber Info., CHAUDHARY's name was listed along with a birth date, and several user phone numbers including 91-931-616-6142.

45.     In the emails of **Subject Account 1**, I observed two emails containing a December 2022 and a January 2023 statement for Indian Private Sector Bank (IDFC) both listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, a phone number ending in 6142, and an email address s***********1@gmail.com.   Between December 1, 2022, and January 31, 2023, CHAUDHARY has had 3,519,216 INR, approximately $42,230 in deposits and 3,517,448 INR, approximately $42,209 in withdrawals.

46.     I also observed a RKSV Securities India Private Limited quarterly statement from October 2022 through December 2022 listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, phone number 931-616-6142, and email address **Subject Account 1**.

47.     I also observed an IIFL Securities Ltd. client master report from February 2023, listing the name of CHAUDHARY, the same DOB as his U.S. visa application (see below, ¶¶58–59), an address in Gandhinagar, Gujarat, India, phone number ending in 6142, and email address **Subject Account 1**.

48.     In the Google Maps folder, I observed several searches that coincided with an address Individual A picked up a money package from.  For example, on

January 6, 2023, a user of **Subject Account 1** searched for "5842 158th Pl., Oak Forest, IL 60452", "5842 158th Pl". On January 10, 2023, a user of **Subject Account 1** searched for "5842 158th Pl", "5842 158th Pl, Apt # 1B, Oak IL - 60452", "5842 158th Pl #1b". On January 9, 2023, Victim 4 sent a money package addressed to Thomas Warner at 5842 15th Pl, Apt #1BL, Oak Forest, IL 60425. On January 9, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** that read "Sender Name – Namie A Maife address-6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – 1z6978ea0141789236 Reiver NAME = THOMAS WARNER 582 158th Pl ,APT#1BL, OAK IL – 60452 OVERNIGHT DELIVRY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED." Open-source records show that, for the UPS tracking number above, the package was delivered on January 11, 2023. In interviews with Individual A, Individual A confirmed that they picked up the package from that address. Om January 11, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** indicating that the package was picked up.

49.     In the Google Search folder, I observed a search that coincided with an address Individual A picked up a money package from.  On January 16, 2023, there was a search for "60409 zip code".  This zip code returns to Calumet City, Illinois.  On January 18, 2023, Victim 4 sent a money package addressed to Brian Winbron at 519 Jeffery Ave, Apt 1, Calumet City, IL 60409.  On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Sender Name -

Namie A Maifli address -6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – Sender Name -Namie A Maifli address -6 Clachan Pe Rumford, ME 04264-1367 Amount - $10000 Ups I'd – 1z6978ea0142585454 Reciver NAME = brian winbron 519 Jeffery Ave apt 1 culmet city,60409 , Illinois OVERNIGHT DELIVERY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED".

50.     There were also Google searches on January 19, 2023, for "84004 to 60409 us", "84004 to 60404" and "84004 to 60409 km". The zip code for 84004 returns to Alpine, Utah. On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Zip code 84004".

51.     In the emails for **Subject Account 1**, I also observed an image of Individual A's Illinois Temporary Visitors Driver's License (TVDL), dated December 29, 2022. I also observed a passport photo of Individual A, dated January 2, 2023, the same one observed on the counterfeit California driver's licenses Individual A used to pick up several money packages.

52.     On or about January 19, 2024, the Hon. Judge Gabriel Fuentes, United States Magistrate Judge, approved a warrant in Case No. 24 M 23 to search **Subject Account 1** ("Google Warrant 2"). A true and correct copy of the Application and Affidavit in support of Google Warrant 2 are attached as **Exhibit B** and incorporated by reference. Google Warrant 2 permitted law enforcement to seize items that

constituted "evidence and instrumentalities concerning the "**Subject Offenses**" from October 8, 2022, to May 9, 2023."

53. On or about January 19, 2024, I served Google Warrant 2 on Google.

54. On or about January 24, 2024, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

55. In the emails of **Subject Account 1**, I observed an email from Apple which contained an invoice addressed to CHAUDHARY and a billing address for CHAUDHARY in Gandhinagar, Gujarat, India, which is similar to the address listed in CHAUDHARY's Visa application, described below.[2] The invoice also contained listed the Apple ID as **Subject Account 1**.

56. In the contacts of **Subject Account 1**, I observed a contact listed as "Shreyas iphone" and email address sbchaudhary71@icloud.com. I also observed **Subject Phone 1** listed as "AL CAPONE".

---

[2] The address in the invoice provides the same address number and sector number as listed in the Visa application, but the postal codes differ. However, based on searches in Google Maps, only the postal code listed in the Visa application corresponds to the listed sector in Gandhinagar, Gujarat, India, while the postal code listed in the invoice corresponds to a different area of Gujarat.

57.     In the Google Search folder, I observed a search on October 9, 2022 for "762 us" and "762 us country code", the same area code as **Subject Phone 1** and the same day **Subject Phone 1** account was activated on Whatsapp (see below, ¶67).

*Visa Application*

58.     Records received from the United States Department of State indicate that CHAUDHARY applied for a U.S. B1/B2 visitor visa on or about July 18, 2023. In his visa application, CHAUDHARY listed he has been employed since May 2018 with Chehar Enterprice, listed 91-931-616-6142 as his work phone number and a monthly income of 125,000 Indian Rupees (INR), approximately $1,500.00 USD. CHAUDHARY listed a home address in Gandhinagar, Gujarat, India and a work address in Randheja, Gujarat, India.  The application for the visa is currently on an administrative hold due to the investigation into CHAUDHARY.

59.     CHAUDHARY'S visa application included a photo of him. On October 11, 2023, Individual A was presented with a simultaneous photo array, which included the photo of CHAUDHARY that was included in his visa application. Individual A immediately identified the photo of CHAUDHARY in the photo array. Individual A also stated the voice of the person who contacted her from **Subject Phone 1**, was the same voice as CHAUDHARY who she previously met in India before she came to the U.S. several years ago.  Individual A spoke with CHAUDHARY at **Subject Phone 1** in 2022 and 2023.

*Additional Interviews with Individual A*

60.     During an interview with Individual A on August 8, 2023, Individual A stated that in February 2023, unknown individuals contacted Individual A's boyfriend, who resides in the United States, and Individual A's parents, then-residing in India, stating that Individual A had stolen money and that they—meaning Individual A's parents and boyfriend—needed to pay "Kena" (CHAUDHARY's alias) back. One of these individuals called Individual A's father from a U.S. phone number ending in -2970, and threatened that they were going to give Individual A's information to the police and FBI. Individual A's father continued to receive calls from this number until May 2023.

61.     During an interview with Individual A on December 28, 2023, Individual A stated before she began talking with CHAUDHARY, who was using **Subject Phone 1**, she spoke to him at his 91-931-616-9142 phone number.  It was not until CHAUDHARY spoke with her about picking up money packages that Individual A was contacted by CHAUDHARY using **Subject Phone 1**. Individual A also stated CHAUDHARY told her he had been involved in the money package scheme prior to her involvement, but Individual A is not sure how long CHAUDHARY had been involved.

62.     During an interview with Individual A on January 4, 2023, Individual A stated she knows an Ajay CHAUDHARY (hereinafter Ajay) who she believes is

friends with CHAUDHARY because she saw Ajay and CHAUDHARY in a couple of Facebook photos on CHAUDHARY's Facebook page. One photo was of the two of them together in a picture and the other was with them and several other individuals in a group. Ajay is also from CHAUDHARY's village in India. Ajay works at gas station in Dalton, GA and lives in Dalton, GA.

63. Queries in a law enforcement database show that Ajay resides in Dalton, GA and has a current phone number listing area code 762, the same area code as **Subject Phone 1**. An open-source search revealed that area code 762 covers northern Georgia, northeast Georgia and a small section of western Georgia. Dalton, GA falls within this coverage.

*Subscriber Information for Subject Phone 1*

64. Records received from T-Mobile in response to a grand jury subpoena for **Subject Phone 1** shows a subscriber name of "Ajay Chaudhary". The account was activated on October 8, 2022, and deactivated on May 9, 2023. The plan was a monthly pre-paid plan. No other subscriber information or payment records were available. In the call records, there was a mobile terminating call (mtc) from 91-931-616-6142 to **Subject Phone 1** on October 9, 2022, at 14:54:28 UTC.

65. Based on my training and experience, individuals engaged in fraud or money laundering often establish pre-paid mobile phone accounts for the purpose of using that account to further their fraud or laundering scheme.

26

66. Records received from WhatsApp in response to a grand jury subpoena for 91-931-616-6142 show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

67. Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the account service start date was on October 9, 2022, at 14:44:07 UTC. Additionally, under account connection and device information, the device type was listed as an iPhone and Device OS Build Number (mobile device's current operating system) was listed as an Apple iPhone 13 Pro.

68. Records received from Apple in response to a grand jury subpoena for **Subject Account 1** show that the account has an Apple ID of sbchaudhary71@gmail.com, login alias sbchaudhary71@icloud.com, that the account is in CHAUDHARY's name, an address in Gandhinagar, Gujarat, India, that is similar to the address listed in CHAUDHARY's visa application,[3] and phone number 91-931-616-6142.

*Prior Apple Warrants*

69. On or about February 12, 2024, the Hon. Judge Keri L. Holleb Hotaling, United States Magistrate Judge, approved a warrant in Case No. 24 M 88 to search

---

[3] The address listed in Apple's records has the same address number and sector number as listed in the visa application, but the postal codes differ. However, based on searches in Google Maps, only the postal code listed in the visa application corresponds to the listed sector in Gandhinagar, Gujarat, India, while the postal code listed in Apple's records corresponds to a different area of Gujarat.

**Subject Account 1** (the "sbchaudhary Apple Warrant 1"). A true and correct copy of the Application and Affidavit in support of sbchaudhary Apple Warrant 1 are attached as **Exhibit C** and incorporated by reference. Sbchaudhary Apple Warrant 1 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses**"), from October 8, 2022, to May 9, 2023."

70.     On or about February 12, 2024, I served sbchaudhary Apple Warrant 1 on Apple.

71.     On or about March 6, 2024, Apple made a response available for me to download. The response contained approximately 31 download links, each of which resulted in the download of a folder.

72.     On or about March 7, 2024, I began to review the items produced by Apple from **Subject Account 1**. Among the items produced by Apple were approximately 3 folders labeled in part "Cloud Photo Library." These folders appear to contain image files that appeared to be backed-up photographs.

73.     Upon opening each folder of image files, the files displayed in a "details" view showed, among other information, the date modified for the file. After reviewing that information, I changed the view options for the folder to display "large icons" of each

file to determine whether the files contained images that were evidence or instrumentalities of the **Subject Offenses** from October 8, 2022, to May 9, 2023.

74. In reviewing the images, I identified multiple images of U.S. one-dollar bills both in photos and as portions of screenshots of text communications. In these images, the U.S. one-dollar bills fill the majority of the picture frame. These images were consistent with the procedure that Individual A described following when CANNON picked up packages of money from her, where CHAUDHARY would provide her with the serial number from a U.S. one-dollar bill and CANNON would send her an image of a U.S. one-dollar bill with that serial number to confirm his identity.

75. The date associated with some of these images and screenshots of text communications showing U.S. one-dollar bills are outside the October 8, 2022, to May 9, 2023, timeframe. It is probable that these images may relate to other instances in which CHAUDHARY communicated about picking up fraud proceeds with individuals who had received those proceeds.

76. The date associated with the earliest image of a U.S. one-dollar bill is approximately August 24, 2023. The most recent date associated with an image of a U.S. one-dollar bill is approximately January 4, 2024.

77. I observed multiple images of CHAUDHARY by himself and with other individuals who appear to be friends. I observed an image of CHAUDHARY and two

29

individuals who match the appearance of his parents observed in their U.S. visa applications.

78.     I observed a Union of India Gujarat State Driving License bearing the photo of CHAUDHARY, his name, his DOB and his father's name. The license was issued September 2018.

79.     I observed the front and back image of a template of a California driver's license. Next to these images, was a passport sized photo of an unknown Indian male individual. This image of the California driver's license template appeared to be the same as the counterfeit driver's licenses seized from Individual A. Based on the similarities with Individual A's counterfeit California driver's licenses involving CHAUDHARY, it appears that CHAUDHARY made or had plans to make a counterfeit California driver's license of this unknown Indian male individual.

80.     Under the Notes folder, an image was attached of an identification card issued by the Government of India bearing the picture of CHAUHDARY, his complete name, his DOB, his father's name, and Permanent Account Number (PAN) BRLPC7926E, all matching the details of his U.S. visa application and the same PAN number located in the IIFL bank document mentioned previously.

81.     On or about March 27, 2024, the Hon. Judge Sheila M. Finnegan, United States Magistrate Judge, approved a warrant in Case No. 24 M 229 to search **Subject Account 1** (the "sbchaudhary Apple Warrant 2"). A true and correct copy of the

Application and Affidavit in support of sbchaudhary Apple Warrant 2 are attached as Exhibit D and incorporated by reference. Sbchaudhary Apple Warrant 2 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses"**), from October 8, 2022 to January 4, 2024."

*Probable Cause to Search Google's Records for the Additional Date Range Including May 9, 2023 to January 4, 2024*

82.     Based on my training and experience in fraud and money laundering investigations, I believe that a search of email provider account contents of individuals engaged in criminal conduct often yields investigative leads relating to

a.      the identities of participants engaged in and witness to identification document fraud and money laundering offenses;

b.      the contact information of participants engaged in and witness to identification document fraud and money laundering offenses;

c.      the timing of communications among participants and other individuals involved in identification document fraud and money laundering offenses;

d.      the methods and techniques used in identification document fraud and money laundering offenses; and

e.      information regarding the physical location of participants engaged in and witness to identification document fraud and money laundering offenses.

31

83. Based on my training and experience, there is probable cause to believe that CHAUDHARY was engaged in planning, executing or concealing his involvement in fraud and money laundering activity from at least October 8, 2022, through January 4, 2024. Specifically, the sophisticated nature of the underlying fraud activity indicates that the scammers are experienced at executing this sort of scheme; for example, the use of a computer hack to trick Victim 2 into calling a fake 1-800 number indicates a relatively high degree of planning and experience. Based on my training and experience, because this sort of scheme has a relatively low probability of deceiving any given individual, scammers typically cast a wide net over a long period of time to maximize the opportunity to find individuals who will believe the deception. Moreover, the complex nature of the money laundering operation, with CHAUDHARY serving as a handler for a person, Individual A, kept mostly in the dark about the scheme, further indicates the sophistication of the operation. Thus, given the sophistication of the scam and the laundering, it is likely that scheme was operating for months before and after Individual A's involvement. Moreover, **Subject Phone 1** was activated on October 9, 2022, and there was an image of a one-dollar bill, likely used to communicate with coconspirators, in CHAUDHARY's Apple account dated January 4, 2024.

84. The evidence received through Google Warrant 1 and Google Warrant 2 further shows that CHAUDHARY used **Subject Account 1** to further his schemes

32

by receiving photos, which were used to manufacture counterfeit driver's licenses, and to research addresses to which fraud proceeds were sent and picked up, and that the Google account associated with **Subject Account 1** contains financial statements for CHAUDHARY that likely reflect his receipt and disposition of his personal proceeds from his offenses.

85. Consequently, based on my training and experience, and given that the Google records associated with **Subject Account 1** contain evidence relating to fraud and money laundering activity through Google Warrant 1 and Google Warrant 2, and that the records received through sbchaudhary Apple Warrant 1 and 2 contain images that are likely evidence of money laundering, there is probable cause to believe that the Google records associated with **Subject Account 1** contain evidence or instrumentalities of CHAUDHARY's fraud and money laundering activity during the period October 8, 2022, through January 4, 2024.

### III.    SEARCH PROCEDURE

86. In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Google to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

a. The search warrant will be presented to Google personnel who will be directed to the information described in Section II of Attachment A;

b. In order to minimize any disruption of computer service to innocent third parties, Google employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

87. Google employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

88. Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Google employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## IV.    CONCLUSION

89.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) are located within one or more computers and/or servers found at Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043. By this affidavit and application, I request that the Court issue a search warrant directed to Google allowing agents to seize the electronic evidence and other information stored on the Google servers following the search procedure described in Attachment A and the Addendum to Attachment A.

FURTHER AFFIANT SAYETH NOT.

Daniel Maslanka, Special Agent
Homeland Security Investigations

Sworn to and affirmed by telephone 17th day of June, 2024

Honorable JEFFREY COLE
United States Magistrate Judge

35

## ATTACHMENT A

### I.  SEARCH PROCEDURE

1.    The search warrant will be presented to Google personnel, who will be directed to isolate those accounts and files described in Section II below.

2.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.    Google employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant. Google shall disclose responsive data, if any, by sending to **Special Agent Daniel Maslanka, Homeland Security Investigations, 747 E 22nd Street, Suite 300, Lombard, Illinois** using the US Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

1

## II.    FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF GOOGLE

To the extent that the information described below in Section III is within the possession, custody, or control of Google, which are stored at premises owned, maintained, controlled, or operated by Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043, Google is required to disclose the following information to the government for the following account:

**sbchaudhary71@gmail.com**

a.    All available account contents from inception of account to present, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or maintained pursuant to law enforcement request to preserve.

b.    All electronic files stored online via Google Drive, stored and presently contained in, or on behalf of the account described above.

c.    All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

d.    All existing printouts from original storage of all the electronic mail described above.

e.    All transactional information of all activity of the electronic mail addresses and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

2

f.     All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing and payment records.

g.     All records indicating the services available to subscribers of the electronic mail addresses and/or individual account described above.

h.     All account contents previously preserved by Google, in electronic or printed form, including all e-mail, including attachments thereto, and Google Drive stored electronic files for the account described above.

i.     All subscriber records for any Google account associated by cookies, recovery email address, or telephone number to the account described above.

j.     All Google Maps data including commute routes, commute settings, and labeled places;

k.     All Google Location History / Google Timeline data for any devices associated with the account described above, including the GPS coordinates and the dates and times of all location recordings.

l.     Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

### III.    INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) between October 8, 2022, and January 4, 2024, as follows:

1.    Items related to the identity of the user or users of **Subject Account 1**.

2.    Items related to the physical location of the users of **Subject Account 1** at or near the times of the **Subject Offenses**.

3.    Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

4.    Financial records relating to the **Subject Offenses**, including receipts, checks, bank and savings and loan records of deposit, withdrawal and wire transfer, statements and other bank records, letters of credit, credit card statements, money orders, cashier's checks, passbooks, cancelled checks, certificates of deposit, loan records, customer account information, income and expense summaries, cash disbursement journals, financial statements, and state and federal income tax returns.

5.    All of the non-content records described above in Section II.

4

## ADDENDUM TO ATTACHMENT A

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a.  examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b.  searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c.  surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d.  opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

e.  using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

5

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

# Exhibit A

AO 106 (REV 4/10) Affidavit for Search Warrant

SAUSA Benjamin J. Christenson, (312) 886-0973

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The Google account sbchaudhary71@gmail.com, further described in Attachment A

Case No. 23 M 348

Ref. No. 23 GJ 147

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Daniel Maslanka, a Special Agent of the Department of Homeland Security, Homeland Security Investigations, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of California, there is now concealed:

### See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) | identification document fraud and money laundering |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

_____
Applicant's Signature

DANIEL MASLANKA, Special Agent
Homeland Security Investigations
Printed name and title

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: April 4, 2023

_____
Judge's signature

City and State: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT     )
                                           )
NORTHERN DISTRICT OF ILLINOIS     )

## AFFIDAVIT

I, Daniel Maslanka, being duly sworn, state as follows:

1.      I am a Special Agent with the Homeland Security Investigations. I have been so employed since approximately August 2020. Prior to becoming a special agent, I was employed as a sworn U.S. Customs and Border Protection Officer beginning in August of 2016.

2.      As part of my duties as Homeland Security Investigations Special Agent, I investigate criminal violations relating to white collar crime, including mail, wire, and money laundering. I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I have participated in the execution of multiple search warrants.

3.      This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Google, a free web-based electronic mail service provider located at 1600 Amphitheatre Parkway, Mountain View, California, 94043. The account to be searched is sbchaudhary71@gmail.com ("**Subject Account 1**"), which is further described in the following paragraphs and in Part II of Attachment A. As set forth below, there is probable cause to believe that

in the account, described in Part II of Attachment A, in the possession of Google, there exists evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i).

4.    The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i), are located in the Subject Account.

## I.    BACKGROUND INFORMATION

### A.    Google

5.    Based on my training and experience and information available from Google's website (google.com), I have learned the following information about Google and Gmail:

a.    Google offers a collection of Internet-based services, including e-mail and online data storage, which is owned and controlled by Google. The services are available at no cost to Internet users, though there are certain options, such as additional online data storage, that users may elect to pay money to receive. Subscribers obtain an account by registering on the Internet with Google and providing Google with basic information, including name, gender, zip code, and other

2

personal/biographical information. Subscribers are given a Google account which ends in "@gmail.com" which is utilized to access these online services.

b.      Google maintains electronic records pertaining to the individuals and entities who maintain Google online subscriber accounts. These records often include account access information, e-mail transaction information, account application information, and in some circumstances billing and payment information.

c.      Any e-mail that is sent to a Google online account subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Google. If the message is not deleted by the subscriber, the account is below the maximum storage limit, and the subscriber accesses the account periodically, that message can remain on Google's servers indefinitely.

d.      When a subscriber sends an e-mail, it is initiated by the user, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google online account users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail may remain on the system indefinitely.

e.      Google online account subscribers can store files, including but not limited to e-mails, documents, and image files, on servers maintained and/or owned by Google. The online data storage service is known as "Google Drive."

3

f. Google online account subscribers can also utilize a feature known as "History" that allows a user to track various historical account activity, including past Google Internet searches performed, information regarding devices which have been used to login to the Google online account, and physical location information regarding from where the Google online account was accessed.

g. Google Maps allows users to search for places and routes to navigate there using public transportation, vehicle, bicycle, or foot. Users can label or designate specific places in Google such as home or work. Google Maps also records commute routes and commute settings based on recorded patterns such as date and time, origin and destination, and route traveled. Google Maps Timeline stores places visited and routes taken based on the user's Location History.

h. Google keeps records that can reveal accounts accessed from the same electronic device, such as the same computer or mobile phone, including accounts that are linked by "cookies," which are small pieces of text sent to the user's Internet browser when visiting websites.

6. Therefore, the computers of Google are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Google, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, to protect the rights of the subjects of the investigation and to effectively

4

pursue this investigation, authority is sought to allow Google to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

## II.     FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

*January 25, 2023 Encounter with Individual A*

7.     On January 25, 2023, HSI was contacted by the Department of Homeland Security (DHS) Office of Inspector General (OIG) who reported that the Riverdale Police Department (RPD) had Individual A in custody for questioning regarding possible money laundering. Individual A had attempted to pick up a package from a UPS access point, located at a CVS store in Riverdale, Illinois. Prior to Individual A arriving at the CVS, the CVS store manager had received a phone call from a purported victim's advocate who gave her name as "Cagney Phillips," who advised that a package addressed to "Oliver Martin" would be delivered that contained money that was proceeds of a scam, identifying a victim, Victim 1, by last name and first initial. Later investigation by law enforcement revealed that the purported victim's advocate had given a false name or place of work.

8.     According to information I reviewed from UPS's website, the CVS store is a UPS access point to which UPS can deliver packages. To pick up a package from

5

the location, an individual must present a government-issued identification matching the full name to which the package is addressed.

9.     The package Individual A attempted to pick up listed as its sender Victim 1, who is located in Colorado. UPS online tracking/shipping records indicate that the package was shipped via UPS next day air to Olivia Martin at the Riverdale CVS. RPD recovered the package from CVS on January 25.

10.     I was informed by RPD, that Individual A arrived at the CVS and law enforcement asked her for identification. Individual A identified herself to RPD as Olivia Martin and presented a California driver's license in that name, bearing number 24867504, and an address in Plumas Lake, California. RPD determined the California driver's license to be counterfeit based on its appearance and on a check of the license through a law enforcement database.   Individual A later presented a genuine Illinois Temporary Visitor Driver's License to RPD, containing her true name. Individual A's date of birth is not the same as the date of birth listed on the Olivia Martin driver's license, but she is of the same approximate age.

11.     Individual A told RPD she was instructed by a man named "Shreyesh" to pick up a package at the CVS in Riverdale, Illinois that contained $20,000 in U.S. currency. Individual A further stated that "Shreyesh" told her to take $300.00 out of the package to keep for herself.   Individual A told RPD she had more counterfeit driver's licenses. While outside the CVS with RPD, Individual A went to her vehicle and presented a total of 14 counterfeit California driver's licenses to RPD. I have

6

reviewed the licenses and observed that each contained a different name, date of birth, and driver's license number, but the same photograph of Individual A and the same California address.

12.     Individual A was taken into custody by RPD and taken to a police station. At the station, law enforcement advised Individual A of her Miranda rights and she agreed to be interviewed. Individual A stated she illegally entered the U.S. in 2019 and owed an organization in India $40,000 for helping her. Individual A stated that she previously picked up two other packages from a Subway and a CVS store, containing $10,000 and $15,000 in cash. RPD obtained consent from Individual A for law enforcement to search her vehicle, cell phone and residence. Individual A was released later that evening and provided a ride home by RPD.[1]

13.     On January 25, 2023, law enforcement searched Individual A's residence, an apartment located in Oak Forest, Illinois. During the search, Individual A provided law enforcement $44,500 in cash. Individual A stated she obtained the money from two packages she had previously picked up on or about January 25, 2023 from a Subway restaurant located in Alsip, Illinois, and a CVS store located in Calumet City, IL. In a subsequent interview, Individual A stated that she had worked at the Subway in Alsip.

---

[1] Individual A has no criminal record. A review of immigration records revealed that Individual A has no legal status in the United States, but is seeking immigration benefits from the Department of Homeland Security. In relation to this case, Individual A has not been made any promises regarding whether she will be charged, but has been informed that the government looks favorably on cooperation.

14.     Individual A told law enforcement that she had discarded the two empty packages that had contained the money into the apartment complex trash bin outside her residence. Law enforcement recovered the two empty packages, which each bore the name of the sender: Victim 2, located in Idaho, and Victim 3, located in South Carolina. The package shipped from Victim 3 was addressed to Ruby Anderson, the name on one of Individual A's California driver's licenses. The package shipped from Victim 2 and shipped to the Subway at which Individual A had previously worked was addressed to "Richard Jones."

15.     On January 25, Individual A signed a form disclaiming any ownership in the money contained in the package recovered from CVS. The following day, RPD opened the package and found that it contained a small black container, approximately the size and shape of a cash box, with $11,000 in cash inside it.

*Interviews with Victims*

16.     Law enforcement interviews with Victims 1, 2, and 3 indicate that all have recently been victims of telephone and internet-based fraud schemes.

17.     The package recovered at the CVS on January 25 did not list a shipping name. Information received in response to a grand jury subpoena to the shipping location indicated that the shipper was Victim 1. I conducted an interview with Victim 1 on February 17, 2023 and reviewed a police report Victim 1 had made. Victim 1 stated that s/he had been contacted on or about January 23, first by a man who called himself "Kevin" and then by a man who called himself "Mark Wadson." The

8

men told Victim 1 that her/his credit card accounts and Social Security number had been compromised. They instructed Victim 1 to withdraw $11,000 from her bank account and ship it to the CVS UPS access point in Riverdale, Illinois addressing it to Olivia Martin.

18.    I interviewed Victim 2 on January 30, 2023 and reviewed a police report Victim 2 had made. Victim 2 reported that in November 2022, s/he was on her/his computer when a screen appeared saying "Microsoft Security Breach" and a 1-800 number was provided to call for assistance. Victim 2 contacted the 1-800 number and was forwarded to an individual who identified himself as "Alex", who identified as a bank fraud investigator from Potlatch No. 1 Financial Credit Union (P1FCU), where Victim 2 has an account. Alex instructed Victim 2 to withdraw money from her/his bank account and send that money to addresses he provided. Most recently, Alex had instructed Victim 2 to withdraw $26,000 and ship it to the Subway restaurant in Alsip, Illinois.  Alex also instructed Victim 2 to purchase gift cards and read off the information found on the gift cards to him.  Victim 2 estimates she has been defrauded of approximately $172,000 in cash and gift cards combined.

19.    Victim 3 filed two police reports with local police in South Carolina in January 2023. Prior to the second police report, law enforcement subsequently interviewed Victim 3's son in relation to this investigation. Victim 3 and her/his son indicated that Victim 3 was contacted by phone by a person who identified themselves as a Wells Fargo bank employee and transferred her/him to another individual who

identified himself as "Mike Rodgers", an officer of the Federal Trade Commission (FTC). Victim 3 was instructed to withdraw $22,000 from her/his Wells Fargo account. Rodgers told Victim 3 to use $3,000 of the money to purchase gift cards and provide Rodgers with the card information over the phone. S/he was instructed to ship the remaining $19,000 to the CVS store in Calumet City, Illinois.

### Information Received from Individual A

20.     I interviewed Individual A several times between January 26, 2023 and March 1, 2023. Individual A stated that she was contacted on WhatsApp by Shreyash B. CHAUDHARI or CHAUDHARY a.k.a. Kena in approximately December 2022 who offered her a way to make money. Individual A met CHAUDHARY on social media in 2020 and have been friends since then. Individual A stated that CHAUDHARY is located in India, but uses a U.S. phone number on WhatsApp to contact Individual A. CHAUDHARY offered Individual A the chance to pick up packages from locations around where she lived and deliver the money inside the packages to contacts provided to her by CHAUDHARY. CHAUDHARY told her that the money came from individuals who were present in the United States unlawfully and needed to send back payment to India for their passage into the United States. Individual A initially denied picking up packages beyond the three in her possession on January 25, but later admitted to picking up approximately nine or ten packages on previous occasions.

21.    CHAUDHARY instructed Individual A to send pictures of herself to CHAUDHARY's email address, which he informed her was **Subject Account 1**. Individual A stated that in January 2023 that she sent a passport photo of herself and a photo of her driver's license to **Subject Account 1**. Individual A then received the fourteen counterfeit California driver's licenses, which contained the passport photo she had sent.

22.    CHAUDHARY instructed Individual A to text him addresses that were near her home in Oak Forest, Illinois, so that the packages could be sent to those addresses. Individual A texted him several addresses.

23.    For each package, CHAUDHARY instructed Individual A to pick up the package at a certain location and which of her counterfeit California driver's licenses she should use to pick up the package. After picking up the package, Individual A was told by CHAUDHARY to take approximately $300 for herself and notify CHAUDHARY that she had received the package. Each package contained cash. For some but not all packages, Individual A counted the money and informed CHAUDHARY of the amount. CHAUDHARY would then send Individual A contact information for the person who would pick up the package from Individual A.

24.    According to Individual A, two individuals picked up packages from Individual A, one who identified himself by name and an unknown African-American man who contacted Individual A by iMessage and picked up packages in the company of an unknown woman. These individuals picked up approximately nine to ten

11

packages from Individual A. CHAUDHARY told Individual A to contact two other individuals to pick up the three packages recovered by law enforcement.

*Review of Individual A's Phone*

25.     Law enforcement made a copy of the data on Individual A's phone with her consent. Review of the data shows that Individual A communicated with a WhatsApp phone number: 762-344-1876 (**Subject Phone 1**). Individual A confirmed the phone number was used by CHAUDHARY. Text messages between Individual A and **Subject Phone 1** begin on December 19, 2022 and continue until February 28, 2023. Individual A stated and review of the text communications confirm that she and CHAUDHARY communicate primarily in Gujarati with some use of English words.

26.     For example, on December 19, 2022, CHAUDHARY sent text messages to Individual A containing information on UPS packages being sent to addresses in Oak Forest, Illinois. One of the text messages stated "Amount - 10500."

27.     In relation to **Subject Account 1,** on December 30, 2022, CHAUDHARY sent a series of text messages to Individual A reading, "sbchaudhary71@gmail.com", "license no pic moklje" and "and hight weight pn kehje." An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "send the photo of the license" and "also tell me the height and weight." A screenshot of the text messages is below.

12



28.     Review of Individual A's phone shows a passport style photo of her dated January 3, 2023 that appears identical to the photo of Individual A on the counterfeit licenses. Law enforcement was unable to locate a copy of the email containing the passport photo on Individual A's phone. At the direction of law enforcement, Individual A attempted to search her email for **Subject Account 1** on two occasions, one in the presence of law enforcement, and was unable to locate the email to **Subject Account 1** containing her passport photo. Individual A stated that she may have deleted the email.

*Controlled Delivery of Sham Currency*

29.     Under direction of law enforcement, Individual A texted with CHAUDHARY using the number of **Subject Phone 1** on WhatsApp on February 3,

2023 that she had the money from the three recovered packages and could deliver it when she returned to Chicago. CHAUDHARY responded that Individual A should call him when she returned. Law enforcement reviewed these texts and confirmed the meaning of the Gujarati words used through an agent fluent in Gujarati.

30.     On Friday, February 24, Individual A texted CHAUDHARY that she would be back in Chicago on Sunday and asked CHAUDHARY for the phone number of the person who would pick up the money from her.   CHAUDHARY texted Individual A that she would be receiving a call from that person. On February 27, Individual A received a call on WhatsApp from an unknown person, but did not speak to the person.  Individual A later texted the unknown person's WhatsApp number and told the person that they could meet at a Mariano's in Des Plaines, Illinois on February 28 at noon. The user of the number responded "Ok."

31.     On February 28, 2023, law enforcement provided Individual A a FedEx box containing sham U.S. currency to provide at the meeting. Law enforcement surveilled Individual A and her vehicle during the meeting. Law enforcement observed a black Nissan Altima, with two occupants, drive to meet Individual A's vehicle on a street near the Mariano's. Immediately prior to the meeting, the same WhatsApp number that had contacted Individual A instructed her to drive to a particular street near the Mariano's for the drop off. Individual A pulled alongside the curb of the street and approximately a minute later, Individual A passed a white box out her driver's side window to an outstretched hand from the front passenger

14

side of the black Nissan Altima. Law enforcement subsequently detained and interviewed the occupants of the Nissan, who after being advised of their Miranda rights and consenting to be interviewed stated that they had received directions to meet Individual A from the same WhatsApp number that communicated with Individual A.

*Subscriber Information*

32.     Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

33.     Records received from Google in response to a grand jury subpoena list the subscriber for **Subject Account 1** as Sb Chaudhary. **Subject Account 1** has a linked Google Pay account with subscriber name Shreyas B. Chaudhary and a billing address in Gandhinagar, Gujarat, India.

34.     On March 7, 2023, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Google, requesting that Google preserve records relating to **Subject Account 1** for a period of 90 days.

35.     Based on my training and experience in fraud and money laundering investigations, I believe that a search of email provider account contents often of individuals engaged in criminal conduct yields investigative leads relating to:

        a.     the identities of participants engaged in and witnesses to identification document fraud and money laundering offenses;

       b.      the contact information of participants engaged in and witnesses to identification document fraud and money laundering offenses;

       c.      the timing of communications among participants and other individuals involved in identification document fraud and money laundering offenses;

       d.      the methods and techniques used in identification document fraud and money laundering offenses;

       e.      information regarding the physical location of participants engaged in and witnesses to identification document fraud and money laundering offenses.

36. In this case, the evidence set out above shows that Individual A sent photos that were used to manufacture counterfeit licenses to **Subject Account 1** and the communications in **Subject Account 1** are likely to show where those photos were subsequently sent and who was involved in the manufacture and transfer of the licenses. In addition, CHAUDHARY is involved in the pick up and laundering of fraud proceeds and **Subject Account 1** may identify coconspirators to CHAUDHARY and show their means of operation as well as identifying who ultimately benefitted from the proceeds of the fraud and money laundering.

## III. SEARCH PROCEDURE

37. In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

16

2703(c)(1)(A), to permit employees of Google to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

      a.    The search warrant will be presented to Google personnel who will be directed to the information described in Section II of Attachment A;

      b.    In order to minimize any disruption of computer service to innocent third parties, Google employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

38.    Google employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

39.    Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Google employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## IV.   CONCLUSION

40.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) are located within one or more computers and/or servers found at Google, headquartered at 1600

17

Amphitheatre Parkway, Mountain View, California, 94043. By this affidavit and application, I request that the Court issue a search warrant directed to Google allowing agents to seize the electronic evidence and other information stored on the Google servers following the search procedure described in Attachment A and the Addendum to Attachment A.

FURTHER AFFIANT SAYETH NOT.

Daniel Maslanka
Special Agent
Homeland Security Investigations

Sworn to and affirmed by telephone 4th day of April, 2023

Honorable MARIA VALDEZ
United States Magistrate Judge

18

## ATTACHMENT A

**I.   SEARCH PROCEDURE**

1.   The search warrant will be presented to Google personnel, who will be directed to isolate those accounts and files described in Section II below.

2.   In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.   Google employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant. Google shall disclose responsive data, if any, by sending to **Special Agent Daniel Maslanka, Homeland Security Investigations, 747 E 22nd Street, Suite 300, Lombard, Illinois** using the US Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

4.   Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

II.    FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF GOOGLE

To the extent that the information described below in Section III is within the possession, custody, or control of Google, which are stored at premises owned, maintained, controlled, or operated by Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043, Google is required to disclose the following information to the government for the following account:

**sbchaudhary71@gmail.com**

a.    All available account contents from inception of account to present, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or maintained pursuant to law enforcement request to preserve.

b.    All electronic files stored online via Google Drive, stored and presently contained in, or on behalf of the account described above.

c.    All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

d.    All existing printouts from original storage of all the electronic mail described above.

2

e.      All transactional information of all activity of the electronic mail addresses and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

f.      All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing and payment records.

g.      All records indicating the services available to subscribers of the electronic mail addresses and/or individual account described above.

h.      All account contents previously preserved by Google, in electronic or printed form, including all e-mail, including attachments thereto, and Google Drive stored electronic files for the account described above.

i.      All subscriber records for any Google account associated by cookies, recovery email address, or telephone number to the account described above.

j.      All Google Maps data including commute routes, commute settings, and labeled places;

k.      All Google Location History / Google Timeline data for any devices associated with the account described above, including the GPS coordinates and the dates and times of all location recordings.

3

l. Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

## III. Information to be Seized by Law Enforcement Personnel

All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) between December 19, 2022 and February 28, 2023, as follows:

1. Items related to the identity of the user or users of **Subject Account 1**.

2. Items related to the physical location of the users of **Subject Account 1** at or near the times of the **Subject Offenses**.

3. Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

4. Financial records relating to the **Subject Offenses**, including receipts, checks, bank and savings and loan records of deposit, withdrawal and wire transfer, statements and other bank records, letters of credit, credit card statements, money orders, cashier's checks, passbooks, cancelled checks, certificates of deposit, loan records, customer account information, income and expense summaries, cash disbursement journals, financial statements, and state and federal income tax returns.

5. All of the non-content records described above in Section II.

4

## ADDENDUM TO ATTACHMENT A

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a. examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

5

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

# Exhibit B

AO 106 (REV 4/10) Affidavit for Search Warrant

SAUSA Charles Fox, (312) 886-0973

---

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

<u>UNDER SEAL</u>

In the Matter of the Search of:

The Google account sbchaudhary71@gmail.com, further described in Attachment A

Case No. 24 M 23

Ref. No. 2023R0147



FILED
1/19/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Daniel Maslanka, a Special Agent of the Department of Homeland Security, Homeland Security Investigations, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

## See Attachment A

located in the Northern District of California, there is now concealed:

## See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) | identification document fraud and money laundering |

The application is based on these facts:

## See Attached Affidavit,

Continued on the attached sheet.

_____
*Applicant's Signature*

<u>DANIEL MASLANKA, Special Agent</u>
<u>Homeland Security Investigations</u>
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: <u>January 19, 2024</u>

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

<u>GABRIEL A. FUENTES, U.S. Magistrate Judge</u>
*Printed name and title*

UNITED STATES DISTRICT COURT )
NORTHERN DISTRICT OF
ILLINOIS )

**AFFIDAVIT**

I, Daniel Maslanka, being duly sworn, state as follows:

1.     I am a Special Agent with the Homeland Security Investigations. I have been so employed since approximately August 2020. Prior to becoming a special agent, I was employed as a sworn U.S. Customs and Border Protection Officer beginning in August of 2016.

2.     As part of my duties as Homeland Security Investigations Special Agent, I investigate criminal violations relating to white collar crime, including mail, wire, and money laundering.  I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I have participated in the execution of multiple search warrants.

3.     This affidavit is made in support of an application for a warrant to search, pursuant to Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), for information associated with certain account(s) that are stored at the premises owned, maintained, controlled, or operated by Google, a free web-based electronic mail service provider located at 1600 Amphitheatre Parkway, Mountain View, California, 94043. The account to be searched is sbchaudhary71@gmail.com ("**Subject Account 1**"), which is further described in the following paragraphs and

1

in Part II of Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Google, there exists evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i).

4.      The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i), are located in the Subject Account.

I.      **BACKGROUND INFORMATION**

    A.      **Google**

5.      Based on my training and experience and information available from Google's website (google.com), I have learned the following information about Google and Gmail:

        a.      Google offers a collection of Internet-based services, including e-mail and online data storage, which is owned and controlled by Google. The services are available at no cost to Internet users, though there are certain options, such as

2

additional online data storage, that users may elect to pay money to receive. Subscribers obtain an account by registering on the Internet with Google and

      b.      providing Google with basic information, including name, gender, zip code, and other personal/biographical information. Subscribers are given a Google account which ends in "@gmail.com" which is utilized to access these online services.

      c.      Google maintains electronic records pertaining to the individuals and entities who maintain Google online subscriber accounts. These records often include account access information, e-mail transaction information, account application information, and in some circumstances billing and payment information.

      d.      Any e-mail that is sent to a Google online account subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by Google. If the message is not deleted by the subscriber, the account is below the maximum storage limit, and the subscriber accesses the account periodically, that message can remain on Google's servers indefinitely.

      e.      When a subscriber sends an e-mail, it is initiated by the user, transferred via the Internet to Google's servers, and then transmitted to its end destination. Google online account users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google server, the e-mail may remain on the system indefinitely.

3

f. Google online account subscribers can store files, including but not limited to e-mails, documents, and image files, on servers maintained and/or owned by Google. The online data storage service is known as "Google Drive." Google online account subscribers can also utilize a feature known as "History" that allows a user to track various historical account activity, including past Google Internet searches performed, information regarding devices which have been used to login to the Google online account, and physical location information regarding from where the Google online account was accessed.

g. Google Maps allows users to search for places and routes to navigate there using public transportation, vehicle, bicycle, or foot. Users can label or designate specific places in Google such as home or work. Google Maps also records commute routes and commute settings based on recorded patterns such as date and time, origin and destination, and route traveled. Google Maps Timeline stores places visited and routes taken based on the user's Location History.

h. Google keeps records that can reveal accounts accessed from the same electronic device, such as the same computer or mobile phone, including accounts that are linked by "cookies," which are small pieces of text sent to the user's Internet browser when visiting websites.

6. Therefore, the computers of Google are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Google, such as account access information,

4

transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, to protect the rights of the subjects of the investigation and to effectively pursue this investigation, authority is sought to allow Google to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent. The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

## II.    FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

7.      The government previously sought a warrant to search **Subject Account 1** on April 4, 2023. Based on the information found in the search warrant return from Google, further discussed below, the government is now seeking an expanded date range—October 8, 2022, to May 9, 2023—for the same **Subject Account 1**.

*January 25, 2023 Encounter with Individual A*[1]

---

[1] Individual A has no criminal record. A review of immigration records revealed that Individual A has no legal status in the United States, but is seeking immigration benefits from the Department of Homeland Security. In relation to this case, Individual A has not been made any promises regarding whether she will be charged, but has been informed that the government looks favorably on cooperation.

5

8.     On January 25, 2023, HSI was contacted by the Department of Homeland Security (DHS) Office of Inspector General (OIG) who reported that the Riverdale Police Department (RPD) had Individual A in custody for questioning regarding possible money laundering. Individual A had attempted to pick up a package from a UPS access point, located at a CVS store in Riverdale, Illinois. Prior to Individual A arriving at the CVS, the CVS store manager had received a phone call from a purported victim's advocate who gave her name as "Cagney Phillips," who advised that a package addressed to "Oliver Martin" would be delivered that contained money that was proceeds of a scam, identifying a victim, Victim 1, by last name and first initial. Later investigation by law enforcement revealed that the purported victim's advocate had given a false name or place of work.

9.     According to information I reviewed from UPS's website, the CVS store is a UPS access point to which UPS can deliver packages. To pick up a package from the location, an individual must present a government-issued identification matching the full name to which the package is addressed.

10.     The package Individual A attempted to pick up listed as its sender Victim 1, who is located in Colorado. UPS online tracking/shipping records indicate that the package was shipped via UPS next day air to Olivia Martin at the Riverdale CVS. RPD recovered the package from CVS on January 25.

11.     I was informed by RPD, that Individual A arrived at the CVS and law enforcement asked her for identification. Individual A identified herself to RPD as

6

Olivia Martin and presented a California driver's license in that name, bearing number 24867504, and an address in Plumas Lake, California. RPD determined the California driver's license to be counterfeit based on its appearance and on a check of the license through a law enforcement database. Individual A later presented a genuine Illinois Temporary Visitor Driver's License to RPD, containing her true name. Individual A's date of birth is not the same as the date of birth listed on the Olivia Martin driver's license, but she is of the same approximate age.

12.      Individual A told RPD she was instructed by a man named "Shreyesh" to pick up a package at the CVS in Riverdale, Illinois that contained $20,000 in U.S. currency. Individual A further stated that "Shreyesh" told her to take $300.00 out of the package to keep for herself. Individual A told RPD she had more counterfeit driver's licenses. While outside the CVS with RPD, Individual A went to her vehicle and presented a total of 14 counterfeit California driver's licenses to RPD. I have reviewed the licenses and observed that each contained a different name, date of birth, and driver's license number, but the same photograph of Individual A and the same California address.

13.      Individual A was taken into custody by RPD and taken to a police station. At the station, law enforcement advised Individual A of her Miranda rights and she agreed to be interviewed. Individual A stated she illegally entered the U.S. in 2019 and owed an organization in India $40,000 for helping her. Individual A stated that she previously picked up two other packages from a Subway and a CVS

store, containing $10,000 and $15,000 in cash. RPD obtained consent from Individual A for law enforcement to search her vehicle, cell phone and residence. Individual A was released later that evening and provided a ride home by RPD.

14. On January 25, 2023, law enforcement searched Individual A's residence, an apartment located in Oak Forest, Illinois. During the search, Individual A provided law enforcement $44,500 in cash. Individual A stated she obtained the money from two packages she had previously picked up on or about January 25, 2023 from a Subway restaurant located in Alsip, Illinois, and a CVS store located in Calumet City, IL. In a subsequent interview, Individual A stated that she had worked at the Subway in Alsip.

15. Individual A told law enforcement that she had discarded the two empty packages that had contained the money into the apartment complex trash bin outside her residence. Law enforcement recovered the two empty packages, which each bore the name of the sender: Victim 2, located in Idaho, and Victim 3, located in South Carolina. The package shipped from Victim 3 was addressed to Ruby Anderson, the name on one of Individual A's California driver's licenses. The package shipped from Victim 2 and shipped to the Subway at which Individual A had previously worked was addressed to "Richard Jones."

16. On January 25, Individual A signed a form disclaiming any ownership in the money contained in the package recovered from CVS. The following day, RPD

opened the package and found that it contained a small black container, approximately the size and shape of a cash box, with $11,000 in cash inside it.

*Interviews with Victims*

17.     Law enforcement interviews with Victims 1, 2, and 3 indicate that all have recently been victims of telephone and internet-based fraud schemes.

18.     The package recovered at the CVS on January 25 did not list a shipping name. Information received in response to a grand jury subpoena to the shipping location indicated that the shipper was Victim 1. I conducted an interview with Victim 1 on February 17, 2023 and reviewed a police report Victim 1 had made. Victim 1 stated that s/he had been contacted on or about January 23, first by a man who called himself "Kevin" and then by a man who called himself "Mark Wadson." The men told Victim 1 that her/his credit card accounts and Social Security number had been compromised. They instructed Victim 1 to withdraw $11,000 from her bank account and ship it to the CVS UPS access point in Riverdale, Illinois addressing it to Olivia Martin.

19.     I interviewed Victim 2 on January 30, 2023 and reviewed a police report Victim 2 had made. Victim 2 reported that in November 2022, s/he was on her/his computer when a screen appeared saying "Microsoft Security Breach" and a 1-800 number was provided to call for assistance. Victim 2 contacted the 1-800 number and was forwarded to an individual who identified himself as "Alex", who identified as a bank fraud investigator from Potlatch No. 1 Financial Credit Union (P1FCU), where

9

Victim 2 has an account. Alex instructed Victim 2 to withdraw money from her/his bank account and send that money to addresses he provided. Most recently, Alex had instructed Victim 2 to withdraw $26,000 and ship it to the Subway restaurant in Alsip, Illinois. Alex also instructed Victim 2 to purchase gift cards and read off the information found on the gift cards to him. Victim 2 estimates she has been defrauded of approximately $172,000 in cash and gift cards combined.

20.     Victim 3 filed two police reports with local police in South Carolina in January 2023. Prior to the second police report, law enforcement subsequently interviewed Victim 3's son in relation to this investigation. Victim 3 and her/his son indicated that Victim 3 was contacted by phone by a person who identified themselves as a Wells Fargo bank employee and transferred her/him to another individual who identified himself as "Mike Rodgers", an officer of the Federal Trade Commission (FTC). Victim 3 was instructed to withdraw $22,000 from her/his Wells Fargo account. Rodgers told Victim 3 to use $3,000 of the money to purchase gift cards and provide Rodgers with the card information over the phone. S/he was instructed to ship the remaining $19,000 to the CVS store in Calumet City, Illinois.

21.     Victim 4 was interviewed by the Rumford, Maine Police Department on March 21, 2023, after HSI SA Andrea Ficarella contacted them regarding victim 4 in relation to this investigation. Victim 4 was contacted by phone by a person who identified themselves as "Eric Boston" working for a company out of Washington, D.C. and told Victim 4 his bank account had been compromised. Victim 4 was instructed

10

to mail several packages of money through UPS to several Illinois addresses. Victim 4 estimates he/she has been defrauded of approximately $90,000 in cash.

*Information Received from Individual A*

22.     I interviewed Individual A several times between January 26, 2023, and March 1, 2023. Individual A stated that she was contacted on WhatsApp by SHREYASH B. CHAUDHARI or CHAUDHARY a.k.a. Kena in approximately December 2022 who offered her a way to make money. Individual A met CHAUDHARY on social media in 2020 and have been friends since then. Individual A stated that CHAUDHARY is located in India, but uses a U.S. phone number on WhatsApp to contact Individual A. CHAUDHARY offered Individual A the chance to pick up packages from locations around where she lived and deliver the money inside the packages to contacts provided to her by CHAUDHARY. CHAUDHARY told her that the money came from individuals who were present in the United States unlawfully and needed to send back payment to India for their passage into the United States. Individual A initially denied picking up packages beyond the three in her possession on January 25, but later admitted to picking up approximately nine or ten packages on previous occasions.

23.     CHAUDHARY instructed Individual A to send pictures of herself to CHAUDHARY's email address, which he informed her was **Subject Account 1**. Individual A stated that in January 2023 that she sent a passport photo of herself and a photo of her driver's license to **Subject Account 1**. Individual A then received

11

the fourteen counterfeit California driver's licenses, which contained the passport photo she had sent.

24.     CHAUDHARY instructed Individual A to text him addresses that were near her home in Oak Forest, Illinois, so that the packages could be sent to those addresses. Individual A texted him several addresses.

25.     For each package, CHAUDHARY instructed Individual A to pick up the package at a certain location and which of her counterfeit California driver's licenses she should use to pick up the package. After picking up the package, Individual A was told by CHAUDHARY to take approximately $300 for herself and notify CHAUDHARY that she had received the package. Each package contained cash. For some but not all packages, Individual A counted the money and informed CHAUDHARY of the amount. CHAUDHARY would then send Individual A contact information for the person who would pick up the package from Individual A.

26.     According to Individual A, two individuals picked up packages from Individual A, one who identified himself by name and an unknown African-American man who contacted Individual A by iMessage and picked up packages in the company of an unknown woman. These individuals picked up approximately nine to ten packages from Individual A. CHAUDHARY told Individual A to contact two other individuals to pick up the three packages recovered by law enforcement.

*Review of Individual A's Phone*

12

27.     Law enforcement made a copy of the data on Individual A's phone with her consent. Review of the data shows that Individual A communicated with a WhatsApp phone number: 762-344-1876 (**Subject Phone 1**). Individual A confirmed the phone number was used by CHAUDHARY. Text messages between Individual A and **Subject Phone 1** begin on December 19, 2022, and continue until February 28, 2023. Individual A stated and review of the text communications confirm that she and CHAUDHARY communicate primarily in Gujarati with some use of English words.

28.     For example, on December 19, 2022, CHAUDHARY sent text messages to Individual A containing information on UPS packages being sent to addresses in Oak Forest, Illinois. One of the text messages stated "Amount - 10500."

29.     In relation to **Subject Account 1,** on December 30, 2022, CHAUDHARY sent a series of text messages to Individual A reading, "sbchaudhary71@gmail.com", "license no pic moklje" and "and hight weight pn kehje." An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "send the photo of the license" and "also tell me the height and weight." A screenshot of the text messages is below.

13



30.     Review of Individual A's phone shows a passport style photo of her dated January 3, 2023 that appears identical to the photo of Individual A on the counterfeit licenses. Law enforcement was unable to locate a copy of the email containing the passport photo on Individual A's phone. At the direction of law enforcement, Individual A attempted to search her email for **Subject Account 1** on two occasions, one in the presence of law enforcement, and was unable to locate the email to **Subject Account 1** containing her passport photo. Individual A stated that she may have deleted the email.

*Controlled Delivery of Sham Currency*

31.     Under direction of law enforcement, Individual A texted with CHAUDHARY using the number of **Subject Phone 1** on WhatsApp on February 3, 2023 that she had the money from the three recovered packages and could deliver it when she returned to Chicago. CHAUDHARY responded that Individual A should call him when she returned. Law enforcement reviewed these texts and confirmed the meaning of the Gujarati words used through an agent fluent in Gujarati.

32.     On Friday, February 24, Individual A texted CHAUDHARY that she would be back in Chicago on Sunday and asked CHAUDHARY for the phone number of the person who would pick up the money from her.  CHAUDHARY texted Individual A that she would be receiving a call from that person. On February 27, Individual A received a call on WhatsApp from an unknown person, but did not speak to the person.  Individual A later texted the unknown person's WhatsApp number and told the person that they could meet at a Mariano's in Des Plaines, Illinois on February 28 at noon. The user of the number responded "Ok."

33.     On February 28, 2023, law enforcement provided Individual A a FedEx box containing sham U.S. currency to provide at the meeting. Law enforcement surveilled Individual A and her vehicle during the meeting. Law enforcement observed a black Nissan Altima, with two occupants, drive to meet Individual A's vehicle on a street near the Mariano's. Immediately prior to the meeting, the same WhatsApp number that had contacted Individual A instructed her to drive to a particular street near the Mariano's for the drop off. Individual A pulled alongside

the curb of the street and approximately a minute later, Individual A passed a white box out her driver's side window to an outstretched hand from the front passenger side of the black Nissan Altima. Law enforcement subsequently detained and interviewed the occupants of the Nissan, who after being advised of their Miranda rights and consenting to be interviewed stated that they had received directions to meet Individual A from the same WhatsApp number that communicated with Individual A.

*Subscriber Information*

34. Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

35. Records received from Google in response to a grand jury subpoena list the subscriber for **Subject Account 1** as Sb Chaudhary. **Subject Account 1** has a linked Google Pay account with subscriber name Shreyas B. Chaudhary and a billing address in Gandhinagar, Gujarat, India.

36. On March 7, 2023, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Google, requesting that Google preserve records relating to **Subject Account 1** for a period of 90 days.

37. Based on my training and experience in fraud and money laundering investigations, I believe that a search of email provider account contents often of individuals engaged in criminal conduct yields investigative leads relating to:

16

      a.    the identities of participants engaged in and witnesses to identification document fraud and money laundering offenses;

      b.    the contact information of participants engaged in and witnesses to identification document fraud and money laundering offenses;

      c.    the timing of communications among participants and other individuals involved in identification document fraud and money laundering offenses;

      d.    the methods and techniques used in identification document fraud and money laundering offenses;

      e.    information regarding the physical location of participants engaged in and witnesses to identification document fraud and money laundering offenses.

*The Prior Warrant*

38.    On or about April 4, 2023, the Hon. Judge Maria Valdez, United States Magistrate Judge, approved a warrant in Case No. 23 M 348 to search **Subject Account 1** (the "Prior Warrant"). A true and correct copy of the Application and Affidavit in support of the Prior Warrant are attached as **Exhibit A** and incorporated by reference. The Prior Warrant permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses"**), from December 19, 2022, to February 28, 2023."

39.    On or about April 5, 2023, I served the Prior Warrant on Google.

40.     On or about April 18, 2023, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

41.     Under Google Account Subscriber Info., CHAUDHARY's name was listed along with a birth date, and several user phone numbers including 91-931-616-6142.

42.     In the emails of **Subject Account 1**, I observed two emails containing a December 2022 and a January 2023 statement for Indian Private Sector Bank (IDFC) both listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, a phone number ending in 6142, and an email address s**********1@gmail.com. Between December 1, 2022, and January 31, 2023, CHAUDHARY has had 3,519,216 INR, approximately $42,230 in deposits and 3,517,448 INR, approximately $42,209 in withdrawals.

43.     I also observed a RKSV Securities India Private Limited quarterly statement from October 2022 through December 2022 listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, phone number 931-616-6142, and email address **Subject Account 1**.

44.     I also observed an IIFL Securities Ltd. client master report from February 2023, listing the name of CHAUDHARY, the same DOB as his U.S. visa

18

application (see below, ¶¶49–50), an address in Gandhinagar, Gujarat, India, phone number ending in 6142, and email address **Subject Account 1**.

45.     In the Google Maps folder, I observed several searches that coincided with an address Individual A picked up a money package from.  For example, on January 6, 2023, a user of **Subject Account 1** searched for "5842 158th Pl., Oak Forest, IL 60452", "5842 158th Pl".  On January 10, 2023, a user of **Subject Account 1** searched for "5842 158th Pl", "5842 158th Pl, Apt # 1B, Oak IL - 60452", "5842 158th Pl #1b".  On January 9, 2023, Victim 4 sent a money package addressed to Thomas Warner at 5842 15th Pl, Apt #1BL, Oak Forest, IL 60425. On January 9, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** that read "Sender Name – Namie A Maife address-6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – 1z6978ea0141789236 Reiver NAME = THOMAS WARNER 582 158th Pl ,APT#1BL, OAK IL – 60452 OVERNIGHT DELIVRY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED." Open-source records show that, for the UPS tracking number above, the package was delivered on January 11, 2023. In interviews with Individual A, Individual A confirmed that they picked up the package from that address. On January 11, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** indicating that the package was picked up.

46.     In the Google Search folder, I observed a search that coincided with an address Individual A picked up a money package from.  On January 16, 2023, there was a search for "60409 zip code".  This zip code returns to Calumet City, Illinois.  On

19

January 18, 2023, Victim 4 sent a money package addressed to Brian Winbron at 519 Jeffery Ave, Apt 1, Calumet City, IL 60409. On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Sender Name - Namie A Maifli address -6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – Sender Name -Namie A Maifli address -6 Clachan Pe Rumford, ME 04264-1367 Amount - $10000 Ups I'd – 1z6978ea0142585454 Reciver NAME = brian winbron 519 Jeffery Ave apt 1 culmet city,60409 , Illinois OVERNIGHT DELIVERY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED".

47.     There were also Google searches on January 19, 2023, for "84004 to 60409 us", "84004 to 60404" and "84004 to 60409 km". The zip code for 84004 returns to Alpine, Utah. On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Zip code 84004".

48.     In the emails for **Subject Account 1**, I also observed an image of Individual A's Illinois Temporary Visitors Driver's License (TVDL), dated December 29, 2022. I also observed a passport photo of Individual A, dated January 2, 2023, the same one observed on the counterfeit California driver's licenses Individual A used to pick up several money packages.

*Visa Application*

49.     Records received from the United States Department of State indicate that CHAUDHARY applied for a U.S. B1/B2 visitor visa on or about July 18, 2023. In his visa application, CHAUDHARY listed he has been employed since May 2018 with

20

Chehar Enterprice, listed 91-931-616-6142 as his work phone number and a monthly income of 125,000 Indian Rupees (INR), approximately $1,500.00 USD. CHAUDHARY listed a home address in Gandhinagar, Gujarat, India and a work address in Randheja, Gujarat, India. The application for the visa is currently on an administrative hold due to the investigation into CHAUDHARY.

50. CHAUDHARY'S visa application included a photo of him. On October 11, 2023, Individual A was presented with a simultaneous photo array, which included the photo of CHAUDHARY that was included in his visa application. Individual A immediately identified the photo of CHAUDHARY in the photo array. Individual A also stated the voice of the person who contacted her from **Subject Phone 1**, was the same voice as CHAUDHARY who she previously met in India before she came to the U.S. several years ago. Individual A spoke with CHAUDHARY at **Subject Phone 1** in 2022 and 2023.

*Additional Interviews with Individual A*

51. During an interview with Individual A on August 8, 2023, Individual A stated that in February 2023, unknown individuals contacted Individual A's boyfriend, who resides in the United States, and Individual A's parents, then-residing in India, stating that Individual A had stolen money and that they—meaning Individual A's parents and boyfriend—needed to pay "Kena" (CHAUDHARY's alias) back. One of these individuals called Individual A's father from a U.S. phone number ending in -2970, and threatened that they were going to give Individual A's

21

information to the police and FBI. Individual A's father continued to receive calls from this number until May 2023.

52.     During an interview with Individual A on December 28, 2023, Individual A stated before she began talking with CHAUDHARY, who was using **Subject Phone 1**, she spoke to him at his 91-931-616-9142 phone number.  It was not until CHAUDHARY spoke with her about picking up money packages that Individual A was contacted by CHAUDHARY using **Subject Phone 1**. Individual A also stated CHAUDHARY told her he had been involved in the money package scheme prior to her involvement, but Individual A is not sure how long CHAUDHARY had been involved.

53.     During an interview with Individual A on January 4, 2023, Individual A stated she knows an Ajay CHAUDHARY (hereinafter Ajay) who she believes is friends with CHAUDHARY because she saw Ajay and CHAUDHARY in a couple of Facebook photos on CHAUDHARY's Facebook page.  One photo was of the two of them together in a picture and the other was with them and several other individuals in a group.  Ajay is also from CHAUDHARY's village in India.  Ajay works at gas station in Dalton, GA and lives in Dalton, GA.  Queries in a law enforcement database show that Ajay resides in Dalton, GA and has a current phone number listing area code 762, the same area code as **Subject Phone 1**.  An open-source search revealed that area code 762 covers northern Georgia, northeast Georgia and a small section of western Georgia.  Dalton, GA falls within this coverage.

22

*Subscriber Information*

54.     Records received from T-mobile in response to a grand jury subpoena for **Subject Phone 1** shows a subscriber name of "Ajay Chaudhary".  The account was activated on October 8, 2022, and deactivated on May 9, 2023.  The plan was a monthly pre-paid plan. No other subscriber information or payment records were available.  In the call records, there was a mobile terminating call (mtc) from 91-931-616-6142 to **Subject Phone 1** on October 9, 2022, at 14:54:28 UTC.

55.     Based on my training and experience, individuals engaged in fraud or money laundering often establish pre-paid mobile phone accounts for the purpose of using that account to further their fraud or laundering scheme.

56.     Records received from WhatsApp in response to a grand jury subpoena for 91-931-616-6142 show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

57.     Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the account service start date was on October 9, 2022, at 14:44:07 UTC.

58.     On January 2, 2024, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Google, requesting Google preserve records relating to **Subject Account 1** for a period of 90 days.

59.     Based on my training and experience in fraud and money laundering investigations, I believe that a search of email provider account contents of individuals engaged in criminal conduct often yields investigative leads relating to

a.      the identities of participants engaged in and witness to identification document fraud and money laundering offenses;

b.      the contact information of participants engaged in and witness to identification document fraud and money laundering offenses;

c.      the timing of communications among participants and other individuals involved in identification document fraud and money laundering offenses;

d.      the methods and techniques used in identification document fraud and money laundering offenses; and

e.      information regarding the physical location of participants engaged in and witness to identification document fraud and money laundering offenses.

60.     Based on my training and experience, there is probable cause to believe that CHAUDHARY was engaged in planning, executing or concealing his involvement in fraud and money laundering activity from at least October 8, 2022, through May 9, 2023. Specifically, the sophisticated nature of the underlying fraud activity indicates that the scammers are experienced at executing this sort of scheme; for example, the use of a computer hack to trick Victim 2 into calling a fake 1-800 number indicates a relatively high degree of planning and experience. Based on my

24

training and experience, because this sort of scheme has a relatively low probability of deceiving any given individual, scammers typically cast a wide net over a long period of time to maximize the opportunity to find individuals who will believe the deception. Moreover, the complex nature of the money laundering operation, with CHAUDHARY serving as a handler for a person, Individual A, kept mostly in the dark about the scheme, further indicates the sophistication of the operation. Thus, given the sophistication of the scam and the laundering, it is likely that scheme was operating for months before and after Individual A's involvement, and at least between October 8, 2022 and May 9, 2023. The calls received by Individual A's father that continued until May 2023 additionally indicate that this scheme was continuing into that period. The evidence set out above further shows that CHAUDHARY used **Subject Phone 1** to coordinate the picking up and laundering of fraud proceeds, and that **Subject Phone 1** was a monthly pre-paid account, the type of account favored by experienced scammers and launderers to coordinate their criminal activity. Because the scheme was likely in operation between at least October 8, 2022, and May 9, 2023, it is likely CHAUDHARY obtained **Subject Phone 1** for the purpose of using it to further his fraud and laundering activity, and used it for such purposes during the entirety of the period the account was active, October 8, 2022, through May 9, 2023.

61.     The evidence further shows that CHAUDHARY used **Subject Account 1** to further his schemes by receiving photos that were used to manufacture

25

counterfeit driver's licenses and research addresses to which fraud proceeds were sent and picked up, and that **Subject Account 1** contains financial statements for CHAUDHARY that likely reflect his receipt and disposition of his personal proceeds from his offenses. Based on my training and experience, as described above, there is probable cause to believe that CHAUDHARY was planning, executing or concealing his involvement in fraud and money laundering activity from at least October 8, 2022, through May 9, 2023. Consequently, based on my training and experience, and given the evidence that **Subject Account 1** has already been found to contain evidence relating to fraud and money laundering activity, there is probable cause to believe that **Subject Account 1** contains evidence or instrumentalities of CHAUDHARY's fraud and money laundering activity during the period October 8, 2022, through May 9, 2023.

## III.   SEARCH PROCEDURE

62.     In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Google to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

a.     The search warrant will be presented to Google personnel who will be directed to the information described in Section II of Attachment A;

26

b.      In order to minimize any disruption of computer service to innocent third parties, Google employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

63.     Google employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

64.     Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Google employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

27

## IV.  CONCLUSION

65.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) are located within one or more computers and/or servers found at Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043. By this affidavit and application, I request that the Court issue a search warrant directed to Google allowing agents to seize the electronic evidence and other information stored on the Google servers following the search procedure described in Attachment A and the Addendum to Attachment A.

FURTHER AFFIANT SAYETH NOT.

Daniel Maslanka, Special Agent
Homeland Security Investigations

Sworn to and affirmed by telephone 19th day of January, 2024

Honorable GABRIEL A. FUENTES
United States Magistrate Judge

28

# ATTACHMENT A

## I.    SEARCH PROCEDURE

1.    The search warrant will be presented to Google personnel, who will be directed to isolate those accounts and files described in Section II below.

2.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.    Google employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant. Google shall disclose responsive data, if any, by sending to **Special Agent Daniel Maslanka, Homeland Security Investigations, 747 E 22nd Street, Suite 300, Lombard, Illinois** using the US Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

1

## II.   FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF GOOGLE

To the extent that the information described below in Section III is within the possession, custody, or control of Google, which are stored at premises owned, maintained, controlled, or operated by Google, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, 94043, Google is required to disclose the following information to the government for the following account:

### sbchaudhary71@gmail.com

a.     All available account contents from inception of account to present, including e-mails, attachments thereto, drafts, contact lists, address books, and search history, stored and presently contained in, or maintained pursuant to law enforcement request to preserve.

b.     All electronic files stored online via Google Drive, stored and presently contained in, or on behalf of the account described above.

c.     All search history records stored and presently contained in, or on behalf of the account described above including, if applicable, web and application activity history (including search terms), device information history, and location history.

d.     All existing printouts from original storage of all the electronic mail described above.

e.     All transactional information of all activity of the electronic mail addresses and/or individual account described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

2

f.      All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing and payment records.

g.      All records indicating the services available to subscribers of the electronic mail addresses and/or individual account described above.

h.      All account contents previously preserved by Google, in electronic or printed form, including all e-mail, including attachments thereto, and Google Drive stored electronic files for the account described above.

i.      All subscriber records for any Google account associated by cookies, recovery email address, or telephone number to the account described above.

j.      All Google Maps data including commute routes, commute settings, and labeled places;

k.      All Google Location History / Google Timeline data for any devices associated with the account described above, including the GPS coordinates and the dates and times of all location recordings.

l.      Pursuant to 18 U.S.C. § 2703(d), the service provider is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

3

### III. INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) between October 8, 2022, and May 9, 2023, as follows:

1.      Items related to the identity of the user or users of **Subject Account 1**.

2.      Items related to the physical location of the users of **Subject Account 1** at or near the times of the **Subject Offenses**.

3.      Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

4.      Financial records relating to the **Subject Offenses**, including receipts, checks, bank and savings and loan records of deposit, withdrawal and wire transfer, statements and other bank records, letters of credit, credit card statements, money orders, cashier's checks, passbooks, cancelled checks, certificates of deposit, loan records, customer account information, income and expense summaries, cash disbursement journals, financial statements, and state and federal income tax returns.

5.      All of the non-content records described above in Section II.

4

## ADDENDUM TO ATTACHMENT A

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a.   examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b.   searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c.   surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d.   opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

e.   using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

5

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

# Exhibit C

AO 106 (REV 4/10) Affidavit for Search Warrant

SAUSA Charles D. Fox, (312) 886-0973

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**



**FILED** TD
2/12/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

In the Matter of the Search of:

Case No.  24 M 88

The Apple account sbchaudhary71@gmail.com, further described in Attachment A

Ref. No. 2023R0147

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Daniel Maslanka, a Special Agent of the Department of Homeland Security, Homeland Security Investigations, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of California, there is now concealed:

**See Attachment A**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) | identification document fraud and money laundering |

The application is based on these facts:

**See Attached Affidavit,**

Continued on the attached sheet.

_____
*Applicant's Signature*

DANIEL MASLANKA, Special Agent
Homeland Security Investigations
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: February 12, 2024  at 2:46 pm

_____
*Judge's signature*

City and State: Chicago, Illinois

KERI L. HOLLEB HOTALING, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT      )
                                              )
NORTHERN DISTRICT OF ILLINOIS     )

## **AFFIDAVIT**

I, Daniel Maslanka, being duly sworn, state as follows:

1.      I am a Special Agent with the Homeland Security Investigations. I have been so employed since approximately August 2020.

2.      As part of my duties as Homeland Security Investigations Special Agent, I investigate criminal violations relating to white collar crime, including mail fraud, wire fraud, and money laundering. I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to becoming a special agent, I was employed as a sworn U.S. Customs and Border Protection Officer (hereinafter "CBP") since August of 2016. I have participated in the execution of multiple search warrants.

3.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with Apple ID sbchaudhary71@gmail.com ("**Subject Account 1**") that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA. The information to be disclosed by Apple and searched by the

government as described in the following paragraphs and in Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Apple, there exists evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) (possession of five or more identification documents with intent to use unlawfully or transfer) and 1956(a)(1)(B)(i) (money laundering) (the "**Subject Offenses**").

4.      The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of the **Subject Offenses** are located in the Apple records of **Subject Account 1**.

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## I. BACKGROUND INFORMATION

### A. Apple and iCloud[1]

6. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

7. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

   a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

   b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

3

c. iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

4

e. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

8. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email

5

addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

9. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

10. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email

6

account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

11. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

12. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo

Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

13.     Therefore, the computers of Apple are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Apple, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Apple, to protect the rights of the subjects of the investigation and to effectively pursue this investigation, authority is sought to allow Apple to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent.

The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

## II.    FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

*January 25, 2023 Encounter with Individual A*

14.    On January 25, 2023, HSI was contacted by the Department of Homeland Security (DHS) Office of Inspector General (OIG) who reported that the Riverdale Police Department (RPD) had Individual A in custody for questioning regarding possible money laundering. Individual A had attempted to pick up a package from a UPS access point, located at a CVS store in Riverdale, Illinois. Prior to Individual A arriving at the CVS, the CVS store manager had received a phone call from a purported victim's advocate who gave her name as "Cagney Phillips," who advised that a package addressed to "Oliver Martin" would be delivered that contained money that was proceeds of a scam, identifying a victim, Victim 1, by last name and first initial. Later investigation by law enforcement revealed that the purported victim's advocate had given a false name or place of work.

15.    According to information I reviewed from UPS's website, the CVS store is a UPS access point to which UPS can deliver packages. To pick up a package from the location, an individual must present a government-issued identification matching the full name to which the package is addressed.

16.    The package Individual A attempted to pick up listed a shipping location in Colorado. UPS online tracking/shipping records indicate that the package was

shipped via UPS next day air to Olivia Martin at the Riverdale CVS. RPD recovered the package from CVS on January 25.

17.     I was informed by RPD, that Individual A arrived at the CVS and law enforcement asked her for identification. Individual A identified herself to RPD as Olivia Martin and presented a California driver's license in that name, bearing number 24867504, and an address in Plumas Lake, California. RPD determined the California driver's license to be counterfeit based on its appearance and on a check of the license through a law enforcement database.  Individual A later presented a genuine Illinois Temporary Visitor Driver's License to RPD, containing her true name. Individual A's date of birth is not the same as the date of birth listed on the Olivia Martin driver's license, but she is of the same approximate age.

18.     Individual A told RPD she was instructed by a man named "Shreyesh" to pick up a package at the CVS in Riverdale, Illinois that contained $20,000 in U.S. currency. Individual A further stated that "Shreyesh" told her to take $300 out of the package to keep for herself.  Individual A told RPD she had more counterfeit driver's licenses. While outside the CVS with RPD, Individual A went to her vehicle and presented a total of 14 counterfeit California driver's licenses to RPD. I have reviewed the licenses and observed that each contained a different name, date of birth, and driver's license number, but the same photograph of Individual A and the same California address.

10

19.     Individual A was taken into custody by RPD and taken to a police station. At the station, law enforcement advised Individual A of her Miranda rights and she agreed to be interviewed.  Individual A stated she illegally entered the U.S. in 2019 and owed an organization in India $40,000 for helping her.  Individual A stated that she previously picked up two other packages from a Subway and a CVS store, containing $10,000 and $15,000 in cash. RPD obtained consent from Individual A for law enforcement to search her vehicle, cell phone and residence.  Individual A was released later that evening and provided a ride home by RPD.[2]

20.     On January 25, 2023, law enforcement searched Individual A's residence, an apartment located in Oak Forest, Illinois. During the search, Individual A provided law enforcement $44,500 in cash.  Individual A stated she obtained the money from two packages she had previously picked up on or about January 25, 2023 from a Subway restaurant located in Alsip, Illinois, and a CVS store located in Calumet City, IL. In a subsequent interview, Individual A stated that she had worked at the Subway in Alsip.

21.     Individual A told law enforcement that she had discarded the two empty packages that had contained the money into the apartment complex trash bin outside

---

[2] Individual A has no criminal record. A review of immigration records revealed that Individual A has no legal status in the United States, but does have a pending U Visa application relating to a unrelated robbery. In relation to this case, Individual A has not been made any promises regarding whether she will be charged, but has been informed that the government looks favorably on cooperation.

her residence. Law enforcement recovered the two empty packages, which each bore the name of the sender: Victim 2, located in Idaho, and Victim 3, located in South Carolina. The package shipped from Victim 3 was addressed to Ruby Anderson, the name on one of Individual A's California driver's licenses. The package shipped from Victim 2 and shipped to the Subway at which Individual A had previously worked was addressed to "Richard Jones."

22.    On January 25, Individual A signed a form disclaiming any ownership in the money contained in the package recovered from CVS. The following day, RPD opened the package and found that it contained a small black container, approximately the size and shape of a cash box, with $11,000 in cash inside it.

*Interviews with Victims*

23.    Law enforcement interviews with Victims 1, 2, 3, and 4 indicate that all have recently been victims of telephone and internet-based fraud schemes.

24.    The package recovered at the CVS on January 25 did not list a shipping name. Information received in response to a grand jury subpoena to the shipping location indicated that the shipper was Victim 1. I conducted an interview with Victim 1 on February 17, 2023 and reviewed a police report Victim 1 had made. Victim 1 stated that s/he had been contacted on or about January 23, first by a man who called himself "Kevin" and then by a man who called himself "Mark Wadson." The men told Victim 1 that her/his credit card accounts and Social Security number had been compromised. They instructed Victim 1 to withdraw $11,000 from her bank

12

account and ship it to the CVS UPS access point in Riverdale, Illinois addressing it to Olivia Martin.

25.     I interviewed Victim 2 on January 30, 2023 and reviewed a police report Victim 2 had made. Victim 2 reported that in November 2022, s/he was on her/his computer when a screen appeared saying "Microsoft Security Breach" and a 1-800 number was provided to call for assistance. Victim 2 contacted the 1-800 number and was forwarded to an individual who identified himself as "Alex", who identified as a bank fraud investigator from Potlatch No. 1 Financial Credit Union (P1FCU), where Victim 2 has an account. Alex instructed Victim 2 to withdraw money from her/his bank account and send that money to addresses he provided. Most recently, Alex had instructed Victim 2 to withdraw $26,000 and ship it to the Subway restaurant in Alsip, Illinois.  Alex also instructed Victim 2 to purchase gift cards and read off the information found on the gift cards to him.  Victim 2 estimates she has been defrauded of approximately $172,000 in cash and gift cards combined.

26.     Victim 3 filed two police reports with local police in South Carolina in January 2023. Prior to the second police report, law enforcement subsequently interviewed Victim 3's son in relation to this investigation. Victim 3 and her/his son indicated that Victim 3 was contacted by phone by a person who identified themselves as a Wells Fargo bank employee and transferred her/him to another individual who identified himself as "Mike Rodgers", an officer of the Federal Trade Commission (FTC). Victim 3 was instructed to withdraw $22,000 from her/his Wells Fargo

13

account. Rodgers told Victim 3 to use $3,000 of the money to purchase gift cards and provide Rodgers with the card information over the phone. S/he was instructed to ship the remaining $19,000 to the CVS store in Calumet City, Illinois.

27.     Victim 4 was interviewed by the Rumford, Maine Police Department on March 21, 2023, after HSI SA Andrea Ficarella contacted them regarding victim 4 in relation to this investigation. Victim 4 was contacted by phone by a person who identified themselves as "Eric Boston" working for a company out of Washington, D.C. and told Victim 4 his bank account had been compromised. Victim 4 was instructed to mail several packages of money through UPS to several Illinois addresses. Victim 4 estimates he/she has been defrauded of approximately $90,000 in cash.

*Information Received from Individual A*

28.     I interviewed Individual A several times between January 26, 2023 and March 20, 2023. Individual A stated that she was contacted on WhatsApp by Shreyash B. CHAUDHARI or CHAUDHARY a.k.a. Kena in approximately December 2022 who offered her a way to make money. Individual A met CHAUDHARY on social media in 2020 and they have been friends since then. Individual A stated that CHAUDHARY is located in India, but uses a U.S. phone number on WhatsApp to contact Individual A. CHAUDHARY offered Individual A the chance to pick up packages from locations around where she lived and deliver the money inside the packages to contacts provided to her by CHAUDHARY. CHAUDHARY told her that the money came from individuals who were present in the United States unlawfully

14

and needed to send back payment to India for their passage into the United States. Individual A initially denied picking up packages beyond the three in her possession on January 25, but later admitted to picking up approximately nine or ten packages on previous occasions.

29. CHAUDHARY instructed Individual A to send pictures of herself to CHAUDHARY's email address, which he informed her was sbchaudhary71@gmail.com ("**Subject Account 1"**). Individual A stated that in January 2023 that she sent a passport photo of herself and a photo of her driver's license to **Subject Account 1**. Individual A then received the fourteen counterfeit California driver's licenses, which contained the passport photo she had sent.

30. CHAUDHARY instructed Individual A to text him addresses that were near her home in Oak Forest, Illinois, so that the packages could be sent to those addresses. Individual A texted him several addresses.

31. For each package, CHAUDHARY instructed Individual A to pick up the package at a certain location and which of her counterfeit California driver's licenses she should use to pick up the package. After picking up the package, Individual A was told by CHAUDHARY to take approximately $300 for herself and notify CHAUDHARY that she had received the package. Each package contained cash. For some but not all packages, Individual A counted the money and informed CHAUDHARY of the amount. CHAUDHARY would then send Individual A contact information for the person who would pick up the package from Individual A.

15

32. According to Individual A, two individuals picked up packages from Individual A: one who identified himself by name, and a second unknown African-American man who contacted Individual A by iMessage and picked up packages in the company of an unknown woman. These individuals picked up approximately nine to ten packages from Individual A, with the African-American man picking up approximately six or seven packages from Individual A's residence. CHAUDHARY told Individual A to contact two other individuals to pick up the three packages recovered by law enforcement.

*Review of Individual A's Phone*

33. Law enforcement made a copy of the data on Individual A's phone with her consent. Review of the data shows that Individual A communicated with a WhatsApp phone number: 762-344-1876 (**Subject Phone 1**). Individual A confirmed the phone number was used by CHAUDHARY. Text messages between Individual A and **Subject Phone 1** begin on December 19, 2022, and continue until February 28, 2023. Individual A stated and review of the text communications confirm that she and CHAUDHARY communicate primarily in Gujarati with some use of English words.

34. For example, on December 19, 2022, CHAUDHARY sent WhatsApp messages to Individual A containing information on UPS packages being sent to addresses in Oak Forest, Illinois. One of the text messages stated "Amount – 10500."

16

35. In relation to **Subject Account 1,** on December 30, 2022, CHAUDHARY sent a series of text messages to Individual A reading, "sbchaudhary71@gmail.com", "license no pic moklje" and "and hight weight pn kehje." An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "send the photo of the license" and "also tell me the height and weight." A screenshot of the text messages is below.



36. Review of Individual A's phone shows a passport style photo of her dated January 3, 2023 that appears identical to the photo of Individual A on the counterfeit licenses. Law enforcement was unable to locate a copy of the email containing the passport photo on Individual A's phone. At the direction of law enforcement, Individual A attempted to search her email for **Subject Account 1** on two occasions,

17

one in the presence of law enforcement, and was unable to locate the email to **Subject Account 1** containing her passport photo. Individual A stated that she may have deleted the email.

*Controlled Delivery of Sham Currency*

37.     Under direction of law enforcement, Individual A texted with CHAUDHARY using the number of **Subject Phone 1** on WhatsApp on February 3, 2023 that she had the money from the three recovered packages and could deliver it when she returned to Chicago. CHAUDHARY responded that Individual A should call him when she returned. Law enforcement reviewed these texts and confirmed the meaning of the Gujarati words used through an agent fluent in Gujarati.

38.     On Friday, February 24, Individual A texted CHAUDHARY that she would be back in Chicago on Sunday and asked CHAUDHARY for the phone number of the person who would pick up the money from her.  CHAUDHARY texted Individual A that she would be receiving a call from that person. On February 27, Individual A received a call on WhatsApp from an unknown person, but did not speak to the person.  Individual A later texted the unknown person's WhatsApp number and told the person that they could meet at a Mariano's in Des Plaines, Illinois on February 28 at noon. The user of the number responded "Ok."

39.     On February 28, 2023, law enforcement provided Individual A a FedEx box containing sham U.S. currency to provide at the meeting. Law enforcement surveilled Individual A and her vehicle during the meeting. Law enforcement

18

observed a black Nissan Altima, with two occupants, drive to meet Individual A's vehicle on a street near the Mariano's. Immediately prior to the meeting, the same WhatsApp number that had contacted Individual A instructed her to drive to a particular street near the Mariano's for the drop off. Individual A pulled alongside the curb of the street and approximately a minute later, Individual A passed a white box out her driver's side window to an outstretched hand from the front passenger side of the black Nissan Altima. Law enforcement subsequently detained and interviewed the occupants of the Nissan, who after being advised of their Miranda rights and consenting to be interviewed stated that they had received directions to meet Individual A from the same WhatsApp number that communicated with Individual A.

*Subscriber Information*

40.    Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

41.    Records received from Google in response to a grand jury subpoena list the subscriber for **Subject Account 1** as Sb Chaudhary. **Subject Account 1** has a linked Google Pay account with subscriber name Shreyas B. Chaudhary and a billing address in Gandhinagar, Gujarat, India.

42. On March 7, 2023, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Google, requesting that Google preserve records relating to **Subject Account 1** for a period of 90 days.

*Google Warrants*

43. On or about April 4, 2023, the Hon. Judge Maria Valdez, United States Magistrate Judge, approved a warrant in Case No. 23 M 348 to search **Subject Account 1** (the "Google Warrant 1"). A true and correct copy of the Application and Affidavit in support of Google Warrant 1 is attached as **Exhibit A** and incorporated by reference. Google Warrant 1 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning violations of the "**Subject Offenses**" from December 19, 2022, to February 28, 2023.

44. On or about April 5, 2023, I served Google Warrant 1 on Google.

45. On or about April 18, 2023, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

46. Under Google Account Subscriber Info., CHAUDHARY's name was listed along with a birth date, and several user phone numbers including 91-931-616-6142.

47. In the emails of **Subject Account 1**, I observed two emails containing

20

a December 2022 and a January 2023 statement for Indian Private Sector Bank (IDFC) both listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, a phone number ending in 6142, and an email address s**********1@gmail.com. Between December 1, 2022, and January 31, 2023, CHAUDHARY has had 3,519,216 INR, approximately $42,230 in deposits and 3,517,448 INR, approximately $42,209 in withdrawals.

48.     I also observed a RKSV Securities India Private Limited quarterly statement from October 2022 through December 2022 listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, phone number 931-616-6142, and email address **Subject Account 1**.

49.     I also observed an IIFL Securities Ltd. client master report from February 2023, listing the name of CHAUDHARY, the same date of birth as his U.S. visa application (see below, ¶¶60–61), an address in Gandhinagar, Gujarat, India, phone number ending in 6142, and email address **Subject Account 1**.

50.     In the Google Maps folder, I observed several searches that coincided with an address Individual A picked up a money package from. For example, on January 6, 2023, a user of **Subject Account 1** searched for "5842 158th Pl., Oak Forest, IL 60452", "5842 158th Pl". On January 10, 2023, a user of **Subject Account 1** searched for "5842 158th Pl", "5842 158th Pl, Apt # 1B, Oak IL - 60452", "5842 158th Pl #1b". On January 9, 2023, Victim 4 sent a money package addressed to Thomas Warner at 5842 15th Pl, Apt #1BL, Oak Forest, IL 60425. On January 9, 2023,

CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** that read "Sender Name – Namie A Maife address-6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – 1z6978ea0141789236 Reiver NAME = THOMAS WARNER 582 158th Pl ,APT#1BL, OAK IL – 60452 OVERNIGHT DELIVRY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED." Open-source records show that, for the UPS tracking number above, the package was delivered on January 11, 2023. In interviews with Individual A, Individual A confirmed that they picked up the package from that address. On January 11, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** indicating that the package was picked up.

51.     In the Google Search folder, I observed a search that coincided with an address Individual A picked up a money package from.  On January 16, 2023, therewas a search for "60409 zip code".  This zip code returns to Calumet City, Illinois. On January 18, 2023, Victim 4 sent a money package addressed to Brian Winbron at 519 Jeffery Ave, Apt 1, Calumet City, IL 60409.  On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Sender Name - Namie A Maifli address -6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – Sender Name -Namie A Maifli address -6 Clachan Pe Rumford, ME 04264-1367 Amount -$10000 Ups I'd – 1z6978ea0142585454 Reciver NAME = brian winbron 519 Jeffery Ave apt 1 culmet city,60409 , Illinois OVERNIGHT DELIVERY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED".

52.     There were also Google searches on January 19, 2023, for "84004 to

22

60409 us", "84004 to 60404" and "84004 to 60409 km". The zip code for 84004 returns to Alpine, Utah. On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Zip code 84004".

53.     In the emails for **Subject Account 1**, I also observed an image of Individual A's Illinois Temporary Visitors Driver's License (TVDL), dated December 29, 2022. I also observed a passport photo of Individual A, dated January 2, 2023, the same one observed on the counterfeit California driver's licenses Individual A used to pick up several money packages.

54.     On or about January 19, 2024, the Hon. Judge Gabriel Fuentes, United States Magistrate Judge, approved a warrant in Case No. 23 M 23 to search **Subject Account 1** ("Google Warrant 2"). A true and correct copy of the Application and Affidavit in support of Google Warrant 2 are attached as **Exhibit B** and incorporated by reference. Google Warrant 2 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning the "**Subject Offenses**" from October 8, 2022, to May 9, 2023."

55.     On or about January 19, 2024, I served the Prior Warrant on Google.

56.     On or about January 24, 2024, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

23

57.     In the emails of **Subject Account 1**, I observed an email from Apple which contained an invoice addressed to CHAUDHARY and a billing address for CHAUDHARY in Gandhinagar, Gujarat, India, which is similar to the address listed in CHAUDHARY's Visa application, described below.[3] The invoice also contained listed the Apple ID as **Subject Account 1**.

58.     In the contacts of **Subject Account 1**, I observed a contact listed as "Shreyas iphone" and email address sbchaudhary71@icloud.com.   I also observed **Subject Phone 1** listed as "AL CAPONE".

59.      In the Google Search folder, I observed a search on October 9, 2022 for "762 us" and "762 us country code", the same area code as **Subject Phone 1** and the same day **Subject Phone 1** account was activated on Whatsapp (see below, ¶66).

*Visa Application*

60.     Records received from the United States Department of State indicate that CHAUDHARY applied for a U.S. B1/B2 visitor visa on or about July 18, 2023. In his visa application, CHAUDHARY listed he has been employed since May 2018 with Chehar Enterprice, listed 91-931-616-6142 as his work phone number and his primary phone number and a monthly income of 125,000 Indian Rupees (INR),

---

[3] The address in the invoice provides the same address number and sector number as listed in the Visa application, but the postal codes differ. However, based on searches in Google Maps, only the postal code listed in the Visa application corresponds to the listed sector in Gandhinagar, Gujarat, India, while the postal code listed in the invoice corresponds to a different area of Gujarat.

approximately $1,500.00 USD. CHAUDHARY listed a home address in Gandhinagar, Gujarat, India and a work address in Randheja, Gujarat, India. The application for the visa is currently on an administrative hold due to the investigation into CHAUDHARY.

61.     CHAUDHARY'S visa application included a photo of him. On October 11, 2023, Individual A was presented with a simultaneous photo array, which included the photo of CHAUDHARY that was included in his visa application. Individual A immediately identified the photo of CHAUDHARY in the photo array. Individual A also stated the voice of the person who contacted her from **Subject Phone 1**, was the same voice as CHAUDHARY who she previously met in India before she came to the U.S. several years ago. Individual A spoke with CHAUDHARY at **Subject Phone 1** in 2022 and 2023.

*Additional Interviews with Individual A*

62.     During an interview with Individual A on August 8, 2023, Individual A stated that in February 2023, unknown individuals contacted Individual A's boyfriend, who resides in the United States, and Individual A's parents, then-residing in India, stating that Individual A had stolen money and that they—meaning Individual A's parents and boyfriend—needed to pay "Kena" (CHAUDHARY's alias) back. One of these individuals called Individual A's father from a U.S. phone number ending in -2970, and threatened that they were going to give Individual A's

25

information to the police and FBI. Individual A's father continued to receive calls from this number until May 2023.

63.     During an interview with Individual A on December 28, 2023, Individual A stated before she began talking with CHAUDHARY, who was using **Subject Phone 1**, she spoke to him at his 91-931-616-9142 phone number.  It was not until CHAUDHARY spoke with her about picking up money packages that Individual A was contacted by CHAUDHARY using **Subject Phone 1**. Individual A also stated CHAUDHARY told her he had been involved in the money package scheme prior to her involvement, but Individual A is not sure how long CHAUDHARY had been involved.

64.     During an interview with Individual A on January 4, 2024, Individual A stated they know an Ajay Chaudhary (hereinafter Ajay) who they believe is friends with CHAUDHARY because they saw Ajay and CHAUDHARY in a couple of Facebook photos on CHAUDHARY's Facebook page.  One photo was of the two of them together in a picture and the other was with them and several other individuals in a group.  Ajay is also from CHAUDHARY's village in India.  Ajay works at a gas station in Dalton, GA and lives in Dalton, GA.

65.     Queries in a law enforcement database show that Ajay resides in Dalton, GA and has a current phone number listing area code 762, the same area code as **Subject Phone 1**.  An open-source search revealed that area code 762 covers northern Georgia, northeast Georgia and a small section of western Georgia.  Dalton,

GA falls within this coverage.

*Subscriber Information*

66.     Records received from T-mobile in response to a grand jury subpoena for **Subject Phone 1** shows a subscriber name of "Ajay Chaudhary". The account was activated on October 8, 2022, and deactivated on May 9, 2023. The plan was a monthly pre-paid plan. No other subscriber information or payment records were available. In the call records, there was a mobile terminating call (mtc) from 91-931-616-6142 to **Subject Phone 1** on October 9, 2022, at 14:54:28 UTC.

67.     Based on my training and experience, individuals engaged in fraud or money laundering often establish pre-paid mobile phone accounts for the purpose of using that account to further their fraud or laundering scheme.

68.     Records received from WhatsApp in response to a grand jury subpoena for 91-931-616-6142 show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

69.     Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the account service start date was on October 9, 2022, at 14:44:07 UTC. Additionally, under account connection and device information, the device type was listed as an iPhone and Device OS Build Number (mobile device's current operating system) was listed as an Apple iPhone 13 Pro.

70.     Records received from Apple in response to a grand jury subpoena for **Subject    Account    1**    show    that    the    account    has    an    Apple    ID    of

27

sbchaudhary71@gmail.com, login alias sbchaudhary71@icloud.com, that the account is in CHAUDHARY's name, an address in Gandhinagar, Gujarat, India, that is similar to the address listed in CHAUDHARY's visa application,[4] and phone number 91-931-616-6142.

71.     In addition, records from Apple show the iCloud features such as iCloud Photos, Contacts, Mail, Messages in iCloud, Notes and Sign in with Apple are turned on for **Subject Account 1**, and that account was being actively used as recently as January 5, 2024.

72.     On January 26, 2024, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Apple, requesting that Apple preserve records relating to **Subject Account 1** for a period of 90 days.

*Probable Cause to Search Apple's Records for* ***Subject Account 1***

73.     I submit that there is probable cause to believe that Apple's records relating to **Subject Account 1**—including the contents of any backups of that account and materials on the phone(s) connected to that account to iCloud—will provide evidence and instrumentalities of the **Subject Offenses**.

---

[4] The address listed in Apple's records has same address number and sector number as listed in the visa application, but the postal codes differ. However, based on searches in Google Maps, only the postal code listed in the visa application corresponds to the listed sector in Gandhinagar, Gujarat, India, while the postal code listed Apple's records corresponds to a different area of Gujarat.

74. Based on my training and experience, there is probable cause to believe that CHAUDHARY was engaged in planning, executing or concealing his involvement in fraud and money laundering activity from at least October 8, 2022, through May 9, 2023. Specifically, the sophisticated nature of the underlying fraud activity indicates that the scammers are experienced at executing this sort of scheme; for example, the use of a computer hack to trick Victim 2 into calling a fake 1-800 number indicates a relatively high degree of planning and experience. Based on my training and experience, because this sort of scheme has a relatively low probability of deceiving any given individual, scammers typically cast a wide net over a long period of time to maximize the opportunity to find individuals who will believe the deception. Moreover, the complex nature of the money laundering operation, with CHAUDHARY serving as a handler for a person, Individual A, kept mostly in the dark about the scheme, further indicates the sophistication of the operation. Thus, given the sophistication of the scam and the laundering, it is likely that scheme was operating for months before and after Individual A's involvement, and at least between October 8, 2022, and May 9, 2023. The calls received by Individual A's father that continued until May 2023 additionally indicate that this scheme was continuing into that period.

75. The evidence further shows that CHAUDHARY used **Subject Account 1** to further his schemes by receiving photos, which were used to manufacture counterfeit driver's licenses, and to research addresses to which fraud proceeds were

29

sent and picked up, and that **Subject Account 1** contains financial statements for CHAUDHARY that likely reflect his receipt and disposition of his personal proceeds from his offenses.

76.     Based on my training and experience, as described above, there is probable cause to believe that CHAUDHARY was planning, executing or concealing his involvement in fraud and money laundering activity from at least October 8, 2022, through May 9, 2023. Consequently, based on my training and experience, and given the fact that the Google records associated with **Subject Account 1** contain evidence relating to fraud and money laundering activity through Google Warrant 1 and Google Warrant 2, there is probable cause to believe that the Apple records associated with **Subject Account 1** contain evidence or instrumentalities of CHAUDHARY's fraud and money laundering activity during the period October 8, 2022, through May 9, 2023.

77.     Based on my training and experience, the training and experience of other law enforcement officers, and background information from Apple, electronic storage space on iCloud may contain data associated with the use of iCloud-connected services, including email, images and videos, web browser settings and iOS device backups, which can contain a user's photos and videos, iMessages, SMS and MMS messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data.  In my training and experience, evidence related to criminal activity of the kind described above may be found in these files

30

and records. Subscribers can also use iCloud to back up their Internet browsing history, which would provide evidence of websites visited and may provide information regarding other services and accounts used by the subscriber.

78.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Other information connected to an Apple ID also may lead to the discovery of additional evidence. For example, emails, instant messages, Internet activity, documents, and contact and calendar information stored in or backed up to the iCloud can lead to the identification of co-conspirators involved in the **Subject Offenses**.

79.     Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. For example, the stored communications and files connected to **Subject Account 1** may provide direct evidence of the offenses under investigation, such as messages from individuals directing the flow of proceeds from fraud.

31

80.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

81.    Account activity may also provide relevant insight into the user of **Subject Account 1**'s state of mind as it relates to the offenses under investigation.  For example, information on **Subject Account 1** may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

82.    Other information connected to an Apple ID may lead to the discovery of additional evidence.  For example, the identification of apps downloaded from App

32

Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

83. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the **Subject Offenses**, including information that can be used to identify the account's user or users.

## III.   SEARCH PROCEDURE

84. In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Apple to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

a.  The search warrant will be presented to Apple personnel who will be directed to the information described in Section II of Attachment A;

b.  In order to minimize any disruption of computer service to innocent third parties, Apple employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate

33

of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

c. Apple employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

d. Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Apple employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## IV.   CONCLUSION

85.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) are located within one or more computers and/or servers found at Apple, headquartered at 1 Infinite Loop, Cupertino, CA. By this affidavit and application, I request that the Court issue a search warrant directed to Apple allowing agents to seize the electronic evidence and other information stored on the Apple servers following the search procedure described in Attachment A and the Addendum to Attachment A.

34

86.     FURTHER AFFIANT SAYETH NOT.


                                                Daniel Maslanka
                                                Special Agent
                                                Homeland Security Investigations


Sworn to and affirmed by telephone 12th day of February, 2024

Honorable Keri L. Holleb Hotaling
United States Magistrate Judge


35

## ATTACHMENT A

**I.   SEARCH PROCEDURE**

1.     The search warrant will be presented to Apple personnel, who will be directed to isolate those accounts and files described in Section II below.

2.     In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.     Apple employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant. Apple shall disclose responsive data, if any, by sending to **Special Agent Daniel Maslanka, Homeland Security Investigations, 747 E 22nd Street, Suite 300, Lombard, Illinois** using the US Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

4.     Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

**II.** **FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF APPLE**

To the extent that the information described below in Section III is within the possession, custody, or control of Apple, which are stored at premises owned, maintained, controlled, or operated by Apple, headquartered at 1 Infinite Loop, Cupertino, CA, regardless of whether such information is located within or outside of the United States. Apple is required to disclose the following information to the government for the following account:

**Sbchaudhary71@gmail.com** (the "**Subject Account**")

a.      All records or other information regarding the identification of the **Subject Account**, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers;

b.      All records or other information regarding the devices associated with, or used in connection with, the **Subject Account** (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"),

2

Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

   c. The contents of all emails associated with the **Subject Account** from October 8, 2022 to May 9, 2023, including stored or preserved copies of emails sent to and from the **Subject Account** (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

   d. The contents of all instant messages associated with the account October 8, 2022 to May 9, 2023, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the **Subject Account** (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

3

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the **Subject Account** (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the **Subject Account** or devices associated with the **Subject Account** were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

4

i.      All records pertaining to communications between Apple and any person regarding the **Subject Account**, including contacts with support services and records of actions taken; and

j.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files.

Pursuant to 18 U.S.C. § 2703(d), Apple is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

## III. INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses**"), from October 8, 2022 to May 9, 2023 as follows:

1.      Items related to the identity of the user or users of the **Subject Account**.

2.      Items related to the physical location of the users of the **Subject Account** at or near the times of the **Subject Offenses**.

3.      Items identifying vehicles used by the users of the **Subject Account** at or near the times of the **Subject Offenses**.

4.      Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

5

5.       Items showing communications between participants in the **Subject Offenses**, including communications to arrange meetings, transfer funds, and facilitate the **Subject Offenses**.

6.       Items demonstrating the state of mind of participants in the **Subject Offenses**, including communications that demonstrate intent, willfulness, knowledge, and lack of mistake.

7.       Items demonstrating the destination or beneficiaries of proceeds of the **Subject Offenses**.

8.       Items showing the possession, use, transfer, or production of false identification documents.

9.       Financial records relating to the **Subject Offenses**, including receipts, checks, bank and savings and loan records of deposit, withdrawal and wire transfer, statements and other bank records, letters of credit, credit card statements, money orders, cashier's checks, passbooks, cancelled checks, certificates of deposit, loan records, customer account information, income and expense summaries, cash disbursement journals, financial statements, and state and federal income tax returns.

10.     All of the non-content records described above in Section II.

## ADDENDUM TO ATTACHMENT A

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a. examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

7

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

# Exhibit D



AO 106 (REV 4/10) Affidavit for Search
Warrant

SAUSA Charles D. Fox (312)886-0973

FILED
3/27/2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The Apple account sbchaudhary71@gmail.com,
further described in Attachment A

Case No. 24M229

Ref. No. 2023R0147

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Daniel Maslanka, a Special Agent of the Department of Homeland Security, Homeland Security Investigations, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of California, there is now concealed:

### See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) | identification document fraud and money laundering |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

DANIEL S MASLANKA  Digitally signed by DANIEL S MASLANKA
Date: 2024.03.27 17:37:25 -05'00'

*Applicant's Signature*

DANIEL MASLANKA, Special Agent
Homeland Security Investigations
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: March 27, 2024

*Shula Finnegan*
*Judge's signature*

City and State: Chicago, Illinois

SHEILA M. FINNEGAN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT      )

                                        )

NORTHERN DISTRICT OF ILLINOIS    )

## **AFFIDAVIT**

I, Daniel Maslanka, being duly sworn, state as follows:

1.     I am a Special Agent with Homeland Security Investigations. I have been so employed since approximately August 2020.

2.     As part of my duties as a Homeland Security Investigations Special Agent, I investigate criminal violations relating to white collar crime, including mail fraud, wire fraud, and money laundering. I have completed the Criminal Investigator Training Program and the HSI Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to becoming a special agent, I was employed as a sworn U.S. Customs and Border Protection Officer (hereinafter "CBP") since August of 2016. I have participated in the execution of multiple search warrants.

3.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with Apple ID sbchaudhary71@gmail.com ("**Subject Account 1**") that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA. The information to be disclosed by Apple and searched by the

government as described in the following paragraphs and in Attachment A. As set forth below, there is probable cause to believe that in the account, described in Part II of Attachment A, in the possession of Apple, there exists evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) (possession of five or more identification documents with intent to use unlawfully or transfer) and 1956(a)(1)(B)(i) (money laundering) (the "**Subject Offenses**").

4.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of the **Subject Offenses** are located in the Apple records of **Subject Account 1**.

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

2

## I. BACKGROUND INFORMATION

### A. Apple and iCloud[1]

6.   Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

7.   Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.   Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.   iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

---

[1] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

3

   c.  iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

   d.  Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.  Find My Friends allows owners of Apple devices to share locations.

f.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

g.     App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

8.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email

5

addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

9.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

10.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email

6

account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

11.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

12.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo

7

Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

13.     Therefore, the computers of Apple are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Apple, such as account access information, transaction information, and account application. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Apple, to protect the rights of the subjects of the investigation and to effectively pursue this investigation, authority is sought to allow Apple to make a digital copy of the entire contents of the information subject to seizure specified in Section II of Attachment A. That copy will be provided to me or to any authorized federal agent.

The contents will then be analyzed to identify records and information subject to seizure pursuant to Section III of Attachment A.

## II.    FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

14.    In summary, HSI is investigating a complex transnational money-laundering scheme. As part of this investigation, HSI previously executed a search warrant on Apple for the Apple ID associated with **Subject Account 1** for the date range October 8, 2022, to May 9, 2023. While reviewing the materials provided by Apple pursuant to that search warrant to determine whether they fell within that date range, I observed materials that are likely evidence or instrumentalities of the **Subject Offenses** but that fell outside the date range prescribed by the warrant. This warrant will allow HSI to collect those materials by expanding the date range, to October 8, 2022 to January 4, 2024.

*January 25, 2023 Encounter with Individual A*

15.    On January 25, 2023, HSI was contacted by the Department of Homeland Security (DHS) Office of Inspector General (OIG) who reported that the Riverdale Police Department (RPD) had Individual A in custody for questioning regarding possible money laundering. Individual A had attempted to pick up a package from a UPS access point, located at a CVS store in Riverdale, Illinois. Prior to Individual A arriving at the CVS, the CVS store manager had received a phone call from a purported victim's advocate who gave her name as "Cagney Phillips," who advised that a package addressed to "Oliver Martin" would be delivered that

9

contained money that was proceeds of a scam, identifying a victim, Victim 1, by last name and first initial. Later investigation by law enforcement revealed that the purported victim's advocate had given a false name or place of work.

16.     According to information I reviewed from UPS's website, the CVS store is a UPS access point to which UPS can deliver packages. To pick up a package from the location, an individual must present a government-issued identification matching the full name to which the package is addressed.

17.     The package Individual A attempted to pick up listed a shipping location in Colorado. UPS online tracking/shipping records indicate that the package was shipped via UPS next day air to Olivia Martin at the Riverdale CVS. RPD recovered the package from CVS on January 25.

18.     I was informed by RPD, that Individual A arrived at the CVS and law enforcement asked her for identification. Individual A identified herself to RPD as Olivia Martin and presented a California driver's license in that name, bearing number 24867504, and an address in Plumas Lake, California. RPD determined the California driver's license to be counterfeit based on its appearance and on a check of the license through a law enforcement database.   Individual A later presented a genuine Illinois Temporary Visitor Driver's License to RPD, containing her true name. Individual A's date of birth is not the same as the date of birth listed on the Olivia Martin driver's license, but she is of the same approximate age.

19.     Individual A told RPD she was instructed by a man named "Shreyesh" to pick up a package at the CVS in Riverdale, Illinois that contained $20,000 in U.S. currency. Individual A further stated that "Shreyesh" told her to take $300 out of the package to keep for herself.  Individual A told RPD she had more counterfeit driver's licenses. While outside the CVS with RPD, Individual A went to her vehicle and presented a total of 14 counterfeit California driver's licenses to RPD. I have reviewed the licenses and observed that each contained a different name, date of birth, and driver's license number, but the same photograph of Individual A and the same California address.

20.     Individual A was taken into custody by RPD and taken to a police station. At the station, law enforcement advised Individual A of her Miranda rights and she agreed to be interviewed.  Individual A stated she illegally entered the U.S. in 2019 and owed an organization in India $40,000 for helping her.  Individual A stated that she previously picked up two other packages from a Subway and a CVS store, containing $10,000 and $15,000 in cash. RPD obtained consent from Individual A for law enforcement to search her vehicle, cell phone and residence.  Individual A was released later that evening and provided a ride home by RPD.[2]

---

[2] Individual A has no criminal record. A review of immigration records revealed that Individual A has no legal status in the United States, but does have a pending U Visa application relating to a unrelated robbery. In relation to this case, Individual A has not been made any promises regarding whether she will be charged, but has been informed that the government looks favorably on cooperation.

21.    On January 25, 2023, law enforcement searched Individual A's residence, an apartment located in Oak Forest, Illinois. During the search, Individual A provided law enforcement $44,500 in cash. Individual A stated she obtained the money from two packages she had previously picked up on or about January 25, 2023 from a Subway restaurant located in Alsip, Illinois, and a CVS store located in Calumet City, IL. In a subsequent interview, Individual A stated that she had worked at the Subway in Alsip.

22.    Individual A told law enforcement that she had discarded the two empty packages that had contained the money into the apartment complex trash bin outside her residence. Law enforcement recovered the two empty packages, which each bore the name of the sender: Victim 2, located in Idaho, and Victim 3, located in South Carolina. The package shipped from Victim 3 was addressed to Ruby Anderson, the name on one of Individual A's California driver's licenses. The package shipped from Victim 2 and shipped to the Subway at which Individual A had previously worked was addressed to "Richard Jones."

23.    On January 25, Individual A signed a form disclaiming any ownership in the money contained in the package recovered from CVS. The following day, RPD opened the package and found that it contained a small black container, approximately the size and shape of a cash box, with $11,000 in cash inside it.

*Interviews with Victims*

12

24.     Law enforcement interviews with Victims 1, 2, 3, and 4 indicate that all have recently been victims of telephone and internet-based fraud schemes.

25.     The package recovered at the CVS on January 25 did not list a shipping name. Information received in response to a grand jury subpoena to the shipping location indicated that the shipper was Victim 1. I conducted an interview with Victim 1 on February 17, 2023 and reviewed a police report Victim 1 had made. Victim 1 stated that s/he had been contacted on or about January 23, first by a man who called himself "Kevin" and then by a man who called himself "Mark Wadson." The men told Victim 1 that her/his credit card accounts and Social Security number had been compromised. They instructed Victim 1 to withdraw $11,000 from her bank account and ship it to the CVS UPS access point in Riverdale, Illinois addressing it to Olivia Martin.

26.     I interviewed Victim 2 on January 30, 2023 and reviewed a police report Victim 2 had made. Victim 2 reported that in November 2022, s/he was on her/his computer when a screen appeared saying "Microsoft Security Breach" and a 1-800 number was provided to call for assistance. Victim 2 contacted the 1-800 number and was forwarded to an individual who identified himself as "Alex", who identified as a bank fraud investigator from Potlatch No. 1 Financial Credit Union (P1FCU), where Victim 2 has an account. Alex instructed Victim 2 to withdraw money from her/his bank account and send that money to addresses he provided. Most recently, Alex had instructed Victim 2 to withdraw $26,000 and ship it to the Subway restaurant in

13

Alsip, Illinois. Alex also instructed Victim 2 to purchase gift cards and read off the information found on the gift cards to him. Victim 2 estimates she has been defrauded of approximately $172,000 in cash and gift cards combined.

27.    Victim 3 filed two police reports with local police in South Carolina in January 2023. Prior to the second police report, law enforcement subsequently interviewed Victim 3's son in relation to this investigation. Victim 3 and her/his son indicated that Victim 3 was contacted by phone by a person who identified themselves as a Wells Fargo bank employee and transferred her/him to another individual who identified himself as "Mike Rodgers", an officer of the Federal Trade Commission (FTC). Victim 3 was instructed to withdraw $22,000 from her/his Wells Fargo account. Rodgers told Victim 3 to use $3,000 of the money to purchase gift cards and provide Rodgers with the card information over the phone. S/he was instructed to ship the remaining $19,000 to the CVS store in Calumet City, Illinois.

28.    Victim 4 was interviewed by the Rumford, Maine Police Department on March 21, 2023, after HSI SA Andrea Ficarella contacted them regarding victim 4 in relation to this investigation. Victim 4 was contacted by phone by a person who identified themselves as "Eric Boston" working for a company out of Washington, D.C. and told Victim 4 his bank account had been compromised. Victim 4 was instructed to mail several packages of money through UPS to several Illinois addresses. Victim 4 estimates he/she has been defrauded of approximately $90,000 in cash.

*Information Received from Individual A*

14

29.     I interviewed Individual A several times between January 26, 2023 and March 20, 2023. Individual A stated that she was contacted on WhatsApp by Shreyash B. CHAUDHARI or CHAUDHARY a.k.a. Kena in approximately December 2022 who offered her a way to make money. Individual A met CHAUDHARY on social media in 2020 and they have been friends since then. Individual A stated that CHAUDHARY is located in India, but uses a U.S. phone number on WhatsApp to contact Individual A.  CHAUDHARY offered Individual A the chance to pick up packages from locations around where she lived and deliver the money inside the packages to contacts provided to her by CHAUDHARY. CHAUDHARY told her that the money came from individuals who were present in the United States unlawfully and needed to send back payment to India for their passage into the United States. Individual A initially denied picking up packages beyond the three in her possession on January 25, but later admitted to picking up approximately nine or ten packages on previous occasions.

30.     CHAUDHARY instructed Individual A to send pictures of herself to CHAUDHARY's email address, which he informed her was sbchaudhary71@gmail.com ("**Subject Account 1**"). Individual A stated that in January 2023 that she sent a passport photo of herself and a photo of her driver's license to **Subject Account 1**. Individual A then received the fourteen counterfeit California driver's licenses, which contained the passport photo she had sent.

15

31.     CHAUDHARY instructed Individual A to text him addresses that were near her home in Oak Forest, Illinois, so that the packages could be sent to those addresses. Individual A texted him several addresses.

32.     For each package, CHAUDHARY instructed Individual A to pick up the package at a certain location and which of her counterfeit California driver's licenses she should use to pick up the package. After picking up the package, Individual A was told by CHAUDHARY to take approximately $300 for herself and notify CHAUDHARY that she had received the package. Each package contained cash. For some but not all packages, Individual A counted the money and informed CHAUDHARY of the amount. CHAUDHARY would then send Individual A contact information for the person who would pick up the package from Individual A.

33.     According to Individual A, two individuals picked up packages from Individual A: one who identified himself by name, and a second unknown African-American man who contacted Individual A by iMessage and picked up packages in the company of an unknown woman. These individuals picked up approximately nine to ten packages from Individual A, with the African-American man picking up approximately six or seven packages from Individual A's residence. CHAUDHARY told Individual A to contact two other individuals to pick up the three packages recovered by law enforcement.

16

*Review of Individual A's Phone*

34.     Law enforcement made a copy of the data on Individual A's phone with her consent. Review of the data shows that Individual A communicated with a WhatsApp phone number: 762-344-1876 (**Subject Phone 1**). Individual A confirmed the phone number was used by CHAUDHARY. Text messages between Individual A and **Subject Phone 1** begin on December 19, 2022, and continue until February 28, 2023. Individual A stated and review of the text communications confirm that she and CHAUDHARY communicate primarily in Gujarati with some use of English words.

35.     For example, on December 19, 2022, CHAUDHARY sent WhatsApp messages to Individual A containing information on UPS packages being sent to addresses in Oak Forest, Illinois. One of the text messages stated "Amount – 10500."

36.     In relation to **Subject Account 1,** on December 30, 2022, CHAUDHARY sent a series of text messages to Individual A reading, "sbchaudhary71@gmail.com", "license no pic moklje" and "and hight weight pn kehje." An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "send the photo of the license" and "also tell me the height and weight." A screenshot of the text messages is below.

17



37.     Review of Individual A's phone shows a passport style photo of her dated January 3, 2023 that appears identical to the photo of Individual A on the counterfeit licenses. Law enforcement was unable to locate a copy of the email containing the passport photo on Individual A's phone. At the direction of law enforcement, Individual A attempted to search her email for **Subject Account 1** on two occasions, one in the presence of law enforcement, and was unable to locate the email to **Subject Account 1** containing her passport photo. Individual A stated that she may have deleted the email.

### *Identification of Clarence CANNON*

38.     Individual A stated that she was initially called by the African-American man, but was not able to locate his phone number in her phone or recall

the number. She was able to identify the man's email address as ccann_0017@yahoo.com. Records received from Yahoo, Inc. in response to a grand jury subpoena indicated that the subscriber was Clarence CANNON.

39.     Records received from the United States Department of State indicate that CANNON had a U.S. passport issued to him in 2017. In his passport application, he listed ccann_0017@yahoo.com as his email address and listed a mailing address in Iuka, Mississippi.

40.     Based on information obtained from Individual A's phone, it appears that CHAUDHARY introduced Individual A to CANNON. On or about December 28, 2022, CHAUDHARY sent a series of WhatsApp messages to Individual A reading, "*USD. 22,350/-* Clarence Cannon 7457 e parr St st Anne IL 60964 Mbl.256 436-2165 +971529573567 (Whatsapp) *1$...C 66624523 A*" and "aa number note lain aavse photo padin aapje". An HSI agent fluent in Gujarati translated the Gujarati words and interpreted the messages as saying "This number will be brought (given) with a note, take a photo and give (send) it to me".

41.     Individual A stated CHAUDHARY provided serial numbers of U.S. one-dollar bills to her that Individual A could use to verify the identity of the individuals picking up money from her.  Based upon this, my understanding is that during this conversation, CHAUDHARY was telling Individual A that the number C66624523 would be found on a U.S. one-dollar bill provided by the person who would pick up the money from her.

*Controlled Delivery of Sham Currency*

42.     Under direction of law enforcement, Individual A texted with CHAUDHARY using the number of **Subject Phone 1** on WhatsApp on February 3, 2023 that she had the money from the three recovered packages and could deliver it when she returned to Chicago. CHAUDHARY responded that Individual A should call him when she returned. Law enforcement reviewed these texts and confirmed the meaning of the Gujarati words used through an agent fluent in Gujarati.

43.     On Friday, February 24, Individual A texted CHAUDHARY that she would be back in Chicago on Sunday and asked CHAUDHARY for the phone number of the person who would pick up the money from her. CHAUDHARY texted Individual A that she would be receiving a call from that person. On February 27, Individual A received a call on WhatsApp from an unknown person, but did not speak to the person. Individual A later texted the unknown person's WhatsApp number and told the person that they could meet at a Mariano's in Des Plaines, Illinois on February 28 at noon. The user of the number responded "Ok."

44.     On February 28, 2023, law enforcement provided Individual A a FedEx box containing sham U.S. currency to provide at the meeting. Law enforcement surveilled Individual A and her vehicle during the meeting. Law enforcement observed a black Nissan Altima, with two occupants, drive to meet Individual A's vehicle on a street near the Mariano's. Immediately prior to the meeting, the same

20

WhatsApp number that had contacted Individual A instructed her to drive to a particular street near the Mariano's for the drop off. Individual A pulled alongside the curb of the street and approximately a minute later, Individual A passed a white box out her driver's side window to an outstretched hand from the front passenger side of the black Nissan Altima. Law enforcement subsequently detained and interviewed the occupants of the Nissan, who after being advised of their Miranda rights and consenting to be interviewed stated that they had received directions to meet Individual A from the same WhatsApp number that communicated with Individual A.

*Subscriber Information*

45.     Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

46.     Records received from Google in response to a grand jury subpoena list the subscriber for **Subject Account 1** as Sb Chaudhary. **Subject Account 1** has a linked Google Pay account with subscriber name Shreyas B. Chaudhary and a billing address in Gandhinagar, Gujarat, India.

47.     On March 7, 2023, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Google, requesting that Google preserve records relating to **Subject Account 1** for a period of 90 days.

*Google Warrants*

48.     On or about April 4, 2023, the Hon. Judge Maria Valdez, United States Magistrate Judge, approved a warrant in Case No. 23 M 348 to search **Subject Account 1** ("Google Warrant 1"). A true and correct copy of the Application and Affidavit in support of Google Warrant 1 is attached as **Exhibit A** and incorporated by reference. Google Warrant 1 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning violations of the "**Subject Offenses"** from December 19, 2022, to February 28, 2023.

49.     On or about April 5, 2023, I served Google Warrant 1 on Google.

50.     On or about April 18, 2023, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

51.     Under Google Account Subscriber Info., CHAUDHARY's name was listed along with a birth date, and several user phone numbers including 91-931-616-6142.

52.     In the emails of **Subject Account 1**, I observed two emails containing a December 2022 and a January 2023 statement for Indian Private Sector Bank (IDFC) both listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, a phone number ending in 6142, and an email address

22

s***********1@gmail.com. Between December 1, 2022, and January 31, 2023, CHAUDHARY has had 3,519,216 INR, approximately $42,230 in deposits and 3,517,448 INR, approximately $42,209 in withdrawals.

53.     I also observed a RKSV Securities India Private Limited quarterly statement from October 2022 through December 2022 listing the name of CHAUDHARY, an address in Gandhinagar, Gujarat, India, phone number 931-616-6142, and email address **Subject Account 1**.

54.     I also observed an IIFL Securities Ltd. client master report from February 2023, listing the name of CHAUDHARY, the same date of birth as his U.S. visa application (see below, ¶¶60–61), an address in Gandhinagar, Gujarat, India, phone number ending in 6142, and email address **Subject Account 1**.

55.     In the Google Maps folder, I observed several searches that coincided with an address Individual A picked up a money package from. For example, on January 6, 2023, a user of **Subject Account 1** searched for "5842 158th Pl., Oak Forest, IL 60452", "5842 158th Pl". On January 10, 2023, a user of **Subject Account 1** searched for "5842 158th Pl", "5842 158th Pl, Apt # 1B, Oak IL - 60452", "5842 158th Pl #1b". On January 9, 2023, Victim 4 sent a money package addressed to Thomas Warner at 5842 15th Pl, Apt #1BL, Oak Forest, IL 60425. On January 9, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** that read "Sender Name – Namie A Maife address-6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – 1z6978ea0141789236 Reiver NAME = THOMAS WARNER 582 158th

Pl ,APT#1BL, OAK IL – 60452 OVERNIGHT DELIVRY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED." Open-source records show that, for the UPS tracking number above, the package was delivered on January 11, 2023. In interviews with Individual A, Individual A confirmed that they picked up the package from that address. On January 11, 2023, CHAUDHARY sent a WhatsApp text message to Individual A from **Subject Phone 1** indicating that the package was picked up.

56.     In the Google Search folder, I observed a search that coincided with an address Individual A picked up a money package from.   On January 16, 2023, therewas a search for "60409 zip code".  This zip code returns to Calumet City, Illinois. On January 18, 2023, Victim 4 sent a money package addressed to Brian Winbron at 519 Jeffery Ave, Apt 1, Calumet City, IL 60409.  On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Sender Name - Namie A Maifli address -6 Clachan Pe Rumford, ME 04274-1327 Ups I'd – Sender Name -Namie A Maifli address -6 Clachan Pe Rumford, ME 04264-1367 Amount - $10000 Ups I'd – 1z6978ea0142585454 Reciver NAME = brian winbron 519 Jeffery Ave apt 1 culmet city,60409 , Illinois OVERNIGHT DELIVERY NO HOLD AT LOCATION SIGNATURE NOT REQUIRED".

57.     There were also Google searches on January 19, 2023, for "84004 to 60409 us", "84004 to 60404" and "84004 to 60409 km".  The zip code for 84004 returns to Alpine, Utah.  On January 19, 2023, CHAUDHARY sent a WhatsApp text message from **Subject Phone 1** that read "Zip code 84004".

58.     In the emails for **Subject Account 1**, I also observed an image of Individual A's Illinois Temporary Visitors Driver's License (TVDL), dated December 29, 2022. I also observed a passport photo of Individual A, dated January 2, 2023, the same one observed on the counterfeit California driver's licenses Individual A used to pick up several money packages.

59.     On or about January 19, 2024, the Hon. Judge Gabriel Fuentes, United States Magistrate Judge, approved a warrant in Case No. 23 M 23 to search **Subject Account 1** ("Google Warrant 2"). A true and correct copy of the Application and Affidavit in support of Google Warrant 2 are attached as **Exhibit B** and incorporated by reference. Google Warrant 2 permitted law enforcement to seize items that constituted "evidence and instrumentalities concerning the "**Subject Offenses**" from October 8, 2022, to May 9, 2023."

60.     On or about January 19, 2024, I served the Prior Warrant on Google.

61.     On or about January 24, 2024, Google made a response available to me to download. The response contained multiple zipped drives, each which resulted in the download of a folder and file or more than one folder and file. I then used a software called Intella to convert the email files into readable PDFs for **Subject Account 1's** contacts, jpgs, emails, PDFs, pngs, and csvs files.

62.     In the emails of **Subject Account 1**, I observed an email from Apple which contained an invoice addressed to CHAUDHARY and a billing address for CHAUDHARY in Gandhinagar, Gujarat, India, which is similar to the address listed

25

in CHAUDHARY's Visa application, described below.[3] The invoice also contained listed the Apple ID as **Subject Account 1**.

63.     In the contacts of **Subject Account 1**, I observed a contact listed as "Shreyas iphone" and email address sbchaudhary71@icloud.com.   I also observed **Subject Phone 1** listed as "AL CAPONE".

64.      In the Google Search folder, I observed a search on October 9, 2022 for "762 us" and "762 us country code", the same area code as **Subject Phone 1** and the same day **Subject Phone 1** account was activated on Whatsapp (see below, ¶66).

*Visa Application*

65.     Records received from the United States Department of State indicate that CHAUDHARY applied for a U.S. B1/B2 visitor visa on or about July 18, 2023. In his visa application, CHAUDHARY listed he has been employed since May 2018 with Chehar Enterprice, listed 91-931-616-6142 as his work phone number and his primary phone number and a monthly income of 125,000 Indian Rupees (INR), approximately $1,500.00 USD.   CHAUDHARY listed a home address in Gandhinagar, Gujarat, India and a work address in Randheja, Gujarat, India.  The

---

[3] The address in the invoice provides the same address number and sector number as listed in the Visa application, but the postal codes differ. However, based on searches in Google Maps, only the postal code listed in the Visa application corresponds to the listed sector in Gandhinagar, Gujarat, India, while the postal code listed in the invoice corresponds to a different area of Gujarat.

application for the visa is currently on an administrative hold due to the investigation into CHAUDHARY.

66.     CHAUDHARY'S visa application included a photo of him. On October 11, 2023, Individual A was presented with a simultaneous photo array, which included the photo of CHAUDHARY that was included in his visa application. Individual A immediately identified the photo of CHAUDHARY in the photo array. Individual A also stated the voice of the person who contacted her from **Subject Phone 1**, was the same voice as CHAUDHARY who she previously met in India before she came to the U.S. several years ago.  Individual A spoke with CHAUDHARY at **Subject Phone 1** in 2022 and 2023.

*Additional Interviews with Individual A*

67.     During an interview with Individual A on August 8, 2023, Individual A stated that in February 2023, unknown individuals contacted Individual A's boyfriend, who resides in the United States, and Individual A's parents, then-residing in India, stating that Individual A had stolen money and that they—meaning Individual A's parents and boyfriend—needed to pay "Kena" (CHAUDHARY's alias) back. One of these individuals called Individual A's father from a U.S. phone number ending in -2970, and threatened that they were going to give Individual A's information to the police and FBI. Individual A's father continued to receive calls from this number until May 2023.

27

68.     During an interview with Individual A on December 28, 2023, Individual A stated before she began talking with CHAUDHARY, who was using **Subject Phone 1**, she spoke to him at his 91-931-616-9142 phone number.  It was not until CHAUDHARY spoke with her about picking up money packages that Individual A was contacted by CHAUDHARY using **Subject Phone 1**. Individual A also stated CHAUDHARY told her he had been involved in the money package scheme prior to her involvement, but Individual A is not sure how long CHAUDHARY had been involved.

69.     During an interview with Individual A on January 4, 2024, Individual A stated they know an Ajay Chaudhary (hereinafter Ajay) who they believe is friends with CHAUDHARY because they saw Ajay and CHAUDHARY in a couple of Facebook photos on CHAUDHARY's Facebook page.  One photo was of the two of them together in a picture and the other was with them and several other individuals in a group.  Ajay is also from CHAUDHARY's village in India.  Ajay works at a gas station in Dalton, GA and lives in Dalton, GA.

70.     Queries in a law enforcement database show that Ajay resides in Dalton, GA and has a current phone number listing area code 762, the same area code as **Subject Phone 1**.  An open-source search revealed that area code 762 covers northern Georgia, northeast Georgia and a small section of western Georgia.  Dalton, GA falls within this coverage.

*Subscriber Information*

71.     Records received from T-mobile in response to a grand jury subpoena for **Subject Phone 1** shows a subscriber name of "Ajay Chaudhary". The account was activated on October 8, 2022, and deactivated on May 9, 2023. The plan was a monthly pre-paid plan. No other subscriber information or payment records were available. In the call records, there was a mobile terminating call (mtc) from 91-931-616-6142 to **Subject Phone 1** on October 9, 2022, at 14:54:28 UTC.

72.     Based on my training and experience, individuals engaged in fraud or money laundering often establish pre-paid mobile phone accounts for the purpose of using that account to further their fraud or laundering scheme.

73.     Records received from WhatsApp in response to a grand jury subpoena for 91-931-616-6142 show that the subscriber is an individual and the email address associated with the subscriber is **Subject Account 1**.

74.     Records received from WhatsApp in response to a grand jury subpoena for **Subject Phone 1** show that the account service start date was on October 9, 2022, at 14:44:07 UTC. Additionally, under account connection and device information, the device type was listed as an iPhone and Device OS Build Number (mobile device's current operating system) was listed as an Apple iPhone 13 Pro.

75.     Records received from Apple in response to a grand jury subpoena for **Subject Account 1** show that the account has an Apple ID of sbchaudhary71@gmail.com, login alias sbchaudhary71@icloud.com, that the account

29

is in CHAUDHARY's name, an address in Gandhinagar, Gujarat, India, that is similar to the address listed in CHAUDHARY's visa application,[4] and phone number 91-931-616-6142.

76.     In addition, records from Apple show the iCloud features such as iCloud Photos, Contacts, Mail, Messages in iCloud, Notes and Sign in with Apple are turned on for **Subject Account 1**, and that account was being actively used as recently as January 5, 2024.

77.     On January 26, 2024, I served a preservation notice pursuant to 18 U.S.C. § 2703(f) on Apple, requesting that Apple preserve records relating to **Subject Account 1** for a period of 90 days.

*Prior Warrant*

78.     On or about February 12, 2024, the Hon. Judge Keri L. Holleb Hotaling, United States Magistrate Judge, approved a warrant in Case No. 24 M 88 to search **Subject Account 1** (the "sbchaudhary Apple Warrant 1").  A true and correct copy of the Application and Affidavit in support of sbchaudhary Apple Warrant 1 are attached as Exhibit C and incorporated by reference.  Sbchaudhary Apple Warrant 1 permitted law enforcement to seize items that constituted "evidence and

---

[4] The address listed in Apple's records has same address number and sector number as listed in the visa application, but the postal codes differ. However, based on searches in Google Maps, only the postal code listed in the visa application corresponds to the listed sector in Gandhinagar, Gujarat, India, while the postal code listed Apple's records corresponds to a different area of Gujarat.

instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses**"), from October 8, 2022 to May 9, 2023."

79. On or about February 12, 2024, I served sbchaudhary Apple Warrant 1 on Apple.

80. On or about March 6, 2024, Apple made a response available for me to download. The response contained approximately 31 download links, each of which resulted in the download of a folder.

81. On or about March 7, 2024, I began to review the items produced by Apple from **Subject Account 1**. Among the items produced by Apple were approximately 3 folders labeled in part "Cloud Photo Library." These folders appear to contain image files that appeared to be backed-up photographs.

82. Upon opening each folder of image files, the files displayed in a "details" view showed, among other information, the date modified for the file. After reviewing that information, I changed the view options for the folder to display "large icons" of each file to determine whether the files contained images that were evidence or instrumentalities of the **Subject Offenses** from October 8, 2022, to May 9, 2023.

83. In reviewing the images, I identified multiple images of U.S. one-dollar bills both in photos and as portions of screenshots of text communications. In these images, the U.S. one-dollar bills fill the majority of the picture frame. These images were consistent with the procedure that Individual A described following when

31

CANNON picked up packages of money from her, where CHAUDHARY would provide her with the serial number from a U.S. one-dollar bill and CANNON would send her an image of a U.S. one-dollar bill with that serial number to confirm his identity.

84.     The date associated with some of these images and screenshots of text communications showing U.S. one-dollar bills are outside the October 8, 2022, to May 9, 2023 timeframe. It is probable that these images may relate to other instances in which CHAUDHARY communicated about picking up fraud proceeds with individuals who had received those proceeds.

85.     The date associated with the earliest image of a U.S. one-dollar bill is approximately August 24, 2023. The most recent date associated with an image of a U.S. one-dollar bill is approximately January 4, 2024.

*Probable Cause to Search Apple's Records for **Subject Account 1***

86.     I submit that there is probable cause to believe that Apple's records relating to **Subject Account 1**—including the contents of any backups of that account and materials on the phone(s) connected to that account to iCloud—will provide evidence and instrumentalities of the **Subject Offenses**.

87.     Based on my training and experience, there is probable cause to believe that CHAUDHARY was engaged in planning, executing or concealing his involvement in fraud and money laundering activity from at least October 8, 2022, through January 4, 2024. Specifically, the sophisticated nature of the underlying

32

fraud activity indicates that the scammers are experienced at executing this sort of scheme; for example, the use of a computer hack to trick Victim 2 into calling a fake 1-800 number indicates a relatively high degree of planning and experience. Based on my training and experience, because this sort of scheme has a relatively low probability of deceiving any given individual, scammers typically cast a wide net over a long period of time to maximize the opportunity to find individuals who will believe the deception. Moreover, the complex nature of the money laundering operation, with CHAUDHARY serving as a handler for a person, Individual A, kept mostly in the dark about the scheme, further indicates the sophistication of the operation. Thus, given the sophistication of the scam and the laundering, it is likely that scheme was operating for months before and after Individual A's involvement.

88.     The evidence received through Google Warrant 1 and Google Warrant 2 further shows that CHAUDHARY used **Subject Account 1** to further his schemes by receiving photos, which were used to manufacture counterfeit driver's licenses, and to research addresses to which fraud proceeds were sent and picked up, and that the Google account associated with **Subject Account 1** contains financial statements for CHAUDHARY that likely reflect his receipt and disposition of his personal proceeds from his offenses.

89.     Consequently, based on my training and experience, and given that the Google records associated with **Subject Account 1** contain evidence relating to fraud and money laundering activity through Google Warrant 1 and Google Warrant 2, and

that the records received through sbchaudhary Apple Warrant 1 contain images that are likely evidence of money laundering, there is probable cause to believe that the Apple records associated with **Subject Account 1** contain evidence or instrumentalities of CHAUDHARY's fraud and money laundering activity during the period October 8, 2022, through January 4, 2024.

90.     Based on my training and experience, the training and experience of other law enforcement officers, and background information from Apple, electronic storage space on iCloud may contain data associated with the use of iCloud-connected services, including email, images and videos, web browser settings and iOS device backups, which can contain a user's photos and videos, iMessages, SMS and MMS messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. In my training and experience, evidence related to criminal activity of the kind described above may be found in these files and records. Subscribers can also use iCloud to back up their Internet browsing history, which would provide evidence of websites visited and may provide information regarding other services and accounts used by the subscriber.

91.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element

34

or, alternatively, to exclude the innocent from further suspicion. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Other information connected to an Apple ID also may lead to the discovery of additional evidence. For example, emails, instant messages, Internet activity, documents, and contact and calendar information stored in or backed up to the iCloud can lead to the identification of co-conspirators involved in the **Subject Offenses**.

92.     Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. For example, the stored communications and files connected to **Subject Account 1** may provide direct evidence of the offenses under investigation, such as messages from individuals directing the flow of proceeds from fraud.

93.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and

35

because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

94. Account activity may also provide relevant insight into the user of **Subject Account 1**'s state of mind as it relates to the offenses under investigation. For example, information on **Subject Account 1** may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

95. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

96. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence

36

of the **Subject Offenses**, including information that can be used to identify the account's user or users.

## III.    SEARCH PROCEDURE

97.    In order to facilitate seizure by law enforcement of the records and information described in Attachment A, this affidavit and application for search warrant seek authorization, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to permit employees of Apple to assist agents in the execution of this warrant. In executing this warrant, the following procedures will be implemented:

    a.  The search warrant will be presented to Apple personnel who will be directed to the information described in Section II of Attachment A;

    b.  In order to minimize any disruption of computer service to innocent third parties, Apple employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II of Attachment A, including an exact duplicate of all information stored in the computer accounts and files described therein;

    c.  Apple employees will provide the exact duplicate in electronic form of the information described in Section II of the Attachment A and all information stored in those accounts and files to the agent who serves this search warrant; and

37

d. Following the protocol set out in the Addendum to Attachment A, law enforcement personnel will thereafter review all information and records received from Apple employees to locate the information to be seized by law enforcement personnel pursuant to Section III of Attachment A.

## IV.    CONCLUSION

98.    Based on the above information, I respectfully submit that there is probable cause to believe that evidence and instrumentalities of violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) are located within one or more computers and/or servers found at Apple, headquartered at 1 Infinite Loop, Cupertino, CA. By this affidavit and application, I request that the Court issue a search warrant directed to Apple allowing agents to seize the electronic evidence and other information stored on the Apple servers following the search procedure described in Attachment A and the Addendum to Attachment A.

99.    FURTHER AFFIANT SAYETH NOT.

DANIEL S MASLANKA
Digitally signed by DANIEL S MASLANKA
Date: 2024.03.27 17:38:42 -05'00'

Daniel Maslanka
Special Agent
Homeland Security Investigations

Sworn to and affirmed by telephone 27th day of March, 2024

Shelia Finnegan

Honorable SHELIA M. FINNEGAN
United States Magistrate Judge

38

## ATTACHMENT A

### I.    SEARCH PROCEDURE

1.    The search warrant will be presented to Apple personnel, who will be directed to isolate those accounts and files described in Section II below.

2.    In order to minimize any disruption of computer service to innocent third parties, company employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein.

3.    Apple employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant. Apple shall disclose responsive data, if any, by sending to **Special Agent Daniel Maslanka, Homeland Security Investigations, 747 E 22nd Street, Suite 300, Lombard, Illinois** using the US Postal Service or another courier service, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

4.    Following the protocol set out in the Addendum to this Attachment, law enforcement personnel will thereafter review information and records received from company employees to locate the information to be seized by law enforcement personnel specified in Section III below.

## II.     FILES AND ACCOUNTS TO BE COPIED BY EMPLOYEES OF APPLE

To the extent that the information described below in Section III is within the possession, custody, or control of Apple, which are stored at premises owned, maintained, controlled, or operated by Apple, headquartered at 1 Infinite Loop, Cupertino, CA, regardless of whether such information is located within or outside of the United States. Apple is required to disclose the following information to the government for the following account:

**Sbchaudhary71@gmail.com** (the "**Subject Account**")

a.      All records or other information regarding the identification of the **Subject Account**, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the accounts were created, the length of service, the IP address used to register the accounts, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers;

b.      All records or other information regarding the devices associated with, or used in connection with, the **Subject Account** (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"),

2

Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the **Subject Account** from October 8, 2022 to January 4, 2024, including stored or preserved copies of emails sent to and from the **Subject Account** (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the account October 8, 2022 to January 4, 2024, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the **Subject Account** (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

3

e.     The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.     All activity, connection, and transactional logs for the **Subject Account** (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.     All records and information regarding locations where the **Subject Account** or devices associated with the **Subject Account** were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.     All records pertaining to the types of service used;

i.     All records pertaining to communications between Apple and any person regarding the **Subject Account**, including contacts with support services and records of actions taken; and

j.   All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files.

Pursuant to 18 U.S.C. § 2703(d), Apple is hereby ordered to disclose the above information to the government within 14 days of the signing of this warrant.

## III.   INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

All information described above in Section II that constitutes evidence and instrumentalities concerning violations of Title 18, United States Code, Sections 1028(a)(3) and 1956(a)(1)(B)(i) (the "**Subject Offenses**"), from October 8, 2022 to January 4, 2024 as follows:

1.     Items related to the identity of the user or users of the **Subject Account**.

2.     Items related to the physical location of the users of the **Subject Account** at or near the times of the **Subject Offenses**.

3.     Items identifying vehicles used by the users of the **Subject Account** at or near the times of the **Subject Offenses**.

4.     Items related to the identities and contact information of participants in or witnesses to the **Subject Offenses**.

5

5.      Items showing communications between participants in the **Subject Offenses**, including communications to arrange meetings, transfer funds, and facilitate the **Subject Offenses**.

6.      Items demonstrating the state of mind of participants in the **Subject Offenses**, including communications that demonstrate intent, willfulness, knowledge, and lack of mistake.

7.      Items demonstrating the destination or beneficiaries of proceeds of the **Subject Offenses**.

8.      Items showing the possession, use, transfer, or production of false identification documents.

9.      Financial records relating to the **Subject Offenses**, including receipts, checks, bank and savings and loan records of deposit, withdrawal and wire transfer, statements and other bank records, letters of credit, credit card statements, money orders, cashier's checks, passbooks, cancelled checks, certificates of deposit, loan records, customer account information, income and expense summaries, cash disbursement journals, financial statements, and state and federal income tax returns.

10.     All of the non-content records described above in Section II.

## ADDENDUM TO ATTACHMENT A

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant requires the recipient of the warrant to copy and produce the contents of an electronic account so that they may be reviewed in a secure environment for information consistent with the warrant.

The account provider shall provide the government only data that fall within the criteria as described in Attachment A(II), which may either be the entire contents of an account or only a subset of an account.

The government's review of the data shall be conducted pursuant to the following protocol:

The government must make reasonable efforts to use methods and procedures that will locate only those categories of data, files, documents, or other electronically stored information that are identified in the warrant, while minimizing exposure or examination of categories that will not reveal the items to be seized in Attachment A(III).

The review of electronically stored information contained in the account described in Attachment A may include the below techniques. These techniques are a non-exclusive list, and the government may use other procedures that minimize the review of information not within the list of items to be seized as set forth in Attachment A(III):

a. examination of categories of data contained in the account to determine whether that data falls within the items to be seized as set forth in Attachment A(III);

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment A(III);

c surveying various file directories and folders to determine whether they include data falling within the list of items to be seized as set forth in Attachment A(III);

d. opening or reading portions of files, and performing key word or concept searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment A(III); and

7

e. using forensic tools to locate data falling within the list of items to be seized as set forth in Attachment A(III).

Law enforcement personnel are not authorized to conduct additional searches for any information beyond the scope of the items to be seized by this warrant as set forth in Attachment A(III). To the extent that materials produced by the account provider pursuant to this search warrant contain evidence of crimes not within the scope of this warrant appears in plain view during the government's review, the government shall submit a new search warrant application seeking authority to expand the scope of the search prior to searching portions of that data or other item that is not within the scope of the warrant. However, the government may continue its search of that same data or other item if it also contains evidence of crimes within the scope of this warrant.

8